THE STATE OF OHIO, APPELLEE, v. TWITTY, APPELLANT.
(Two cases.)

[Cite as State v. Twitty, 18 Ohio App. 2d 15.]

(Nos. 9249 and 9250—Decided April 1, 1969.)

*Mr. John C. Young*, city attorney, *Mr. Thomas E. Erlenbach* and *Mr. Thomas H. Bainbridge*, for appellee.
*Mr. Gordon L. Sroufe*, for appellant.

LEACH, J. These two cases are consolidated on appeal and were consolidated for trial in the Franklin County Municipal Court. Case No. 9249 involves an appeal from the conviction of defendant, appellant herein, by jury trial of the offense of carrying concealed weapons. Case No. 9250 is a conviction of the offense of petty larceny. As assignments of error it is asserted that the trial court erred (1) in overruling defendant's motion to suppress as evidence property taken from his automobile, (2) in admitting into evidence certain oral incriminating statements made by him and (3) in admitting into evidence incriminating oral statements before the corpus delicti was established.

The evidence discloses that at approximately 4 a. m. on February 28, 1968, a police officer of The Ohio State University observed the defendant driving without lights

northbound on Cannon Drive, in the university area leading from Lincoln and Morrill Towers; that in following the vehicle he also observed that something was protruding from the trunk; and that defendant's vehicle then proceeded onto Stadium Drive, still within the university, thence east on Woodruff Avenue and south on High Street where, in response to radio communication given by the police cruiser following defendant's car, another Ohio State University police cruiser blocked the street just north of 15th Avenue. At that time the object protruding from the trunk was seen to be a chair. As defendant stepped from his vehicle, subsequent to potential apprehension relative to driving without lights, inquiry was made by the police as to where the chair came from, and, admittedly, defendant stated that he had taken the chair from Lincoln Tower. He was then placed in the cruiser, and the police having observed a portable stereo in the back seat, inquired as to its ownership and were informed that the defendant sold such equipment. This was ascertained later to be true. The police then searched the vehicle, including opening the glove compartment, and in the glove compartment found a .22 caliber pistol.

Thereafter, the defendant was taken to police headquarters at The Ohio State University, and there orally advised of his constitutional rights not to make any statement, etc. At that time, apparently, no further inquiry was made as to the chair, but instead the inquiry was primarily directed to the pistol. Defendant admitted ownership of the pistol but asserted that it was essential that he carry same as protection on his job of selling electronic-type equipment.

Prior to the trial in the Municipal Court, counsel for defendant filed a motion to suppress the evidence obtained from the automobile (the chair and the pistol) and to suppress certain oral statements made by the defendant. Specifically, the oral statement sought to be suppressed was the statement made at the scene of the arrest in which defendant, in response to inquiry by the police as to where the chair came from, stated that he had taken it from

Lincoln Tower. A Judge of the Municipal Court overruled defendant's motion to suppress. Thereafter, at the time of trial, further objection was made to the admissibility of such statement on the basis of the claim that "corpus delicti" had not been proved. This objection was overruled.

I.

So far as the chair is concerned, the evidence clearly indicates that such was visible without any *search* of the car. Objects in plain view of an officer, who has a right to be in the position where he is, do not involve any problem of "search." *Harris* v. *United States* (1968), 390 U. S. 234 19 L. Ed. 2d 1067, 88 S. Ct. 992.

While the opening of the glove compartment did constitute a "search," it must be remembered that the Fourth Amendment does not proscribe all searches but only "unreasonable searches."

In essence, it appears to be the position of the defendant that a search, even of an automobile, can never be construed as being reasonable where, before such search, it would be *possible* to obtain a search warrant, except in cases where the search is justified for the protection of the person doing the searching or justified to prevent the destruction of evidence of a crime.

We do not agree that this is the present state of the law. In so concluding we recognize that there are some statements by individual members of the United States Supreme Court which would seem to so imply. However, a careful analysis of the majority opinions of that court clearly indicates that inferences to such effect clearly had been negated by the holding of that court in *United States* v. *Rabinowitz* (1950), 339 U. S. 56, 94 L. Ed. 653, 70 S. Ct. 430, and cases decided subsequent to such time.

Prior to *Rabinowitz* that court, in 1948, apparently had held that any search conducted without a search warrant where a warrant could have been obtained was unreasonable. *Trupiano* v. *United States* (1948), 334 U. S. 699, 92 L. Ed. 1663, 68 S. Ct. 1229. See also *McDonald* v. *United States* (1948), 335 U. S. 451, 93 L. Ed. 153, 69 S. Ct. 191.

Prior to *Trupiano*, the court had held, in 1947, that

a search incidental to a lawful arrest was not rendered invalid by the fact that it extended beyond the room in which the accused was arrested, *Harris* v. *United States* (1947), 331 U. S. 145, 91 L. Ed. 1399, 67 S. Ct. 1098.

With this background, the court in *Rabinowitz* specifically overruled *Trupiano* "to the extent that it requires a search warrant solely upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest." While, since *Rabinowitz*, individual members of the Supreme Court occasionally have made statements which might be construed as a desire to return to the principles of *Trupiano*, the rationale expressed in *Rabinowitz* has never been overruled either directly or, in our opinion, by implication.

Counsel for defendant, as to assignment of error number one, relies in large measure on *McDonald* and also on *Preston* v. *United States* (1964), 376 U. S. 364, 11 L.Ed. 2d 777, 84 S.Ct. 881. As previously noted, the reasoning in *McDonald* was later rejected in *Rabinowitz*. In *Preston* the court stated that when a person is lawfully arrested (and here there is no question as to the lawfulness of the arrest) the police have a right without a search warrant to make a contemporaneous search not only of the person of the accused but also of the things under the accused's immediate control and "to an extent depending on the circumstances of the case, to the place where he is arrested." In *Preston* the search was held to be "too remote in time or place to be treated as incidental to the arrest." There the later search of the car had no possible relevance to the prior arrest on a charge of vagrancy and took place several days after the arrest and at a place considerably removed from the place of the arrest.

In *Cooper* v. *California* (1967), 386 U. S. 58, 17 L. Ed. 2d 730, 87 S.Ct. 788, heroin was taken from the glove compartment of the defendant's impounded automobile a week after he had been arrested for narcotics violation. Mr. Justice Black, who also had written the opinion in *Preston*, distinguished the case from *Preston* on the basis that the search in *Preston* "was totally unrelated to the va-

grancy charge for which they arrested him," whereas in *Cooper*, although distant in time, such was reasonably related to the charge for which the arrest was made and was therefore *incidental* to the prior lawful arrest.

In *People* v. *Weaver* (1969),—Ill.—, 243 N. E. 2d 245, a warrantless search of an automobile was upheld even though, at the time of the search, the defendant had already been placed in custody in the police station. Based upon the totality of the evidence, the court concluded that the search was "closely related to the reason" the defendant was arrested, relying upon the language of *Cooper* to such effect. The Illinois Supreme Court stated that "In a situation of this kind it is impossible for police officers to do simultaneously everything that needs to be done, and the fact that some steps are necessarily given priority over others does not affect their legality."

See, also, *Williams* v. *United States* (C. C. A. 5, 1967), 382 F. 2d 48; and *United States* v. *Gorman* (C. C. A. 2, 1965), 355 F. 2d 151.

In the instant case we conclude that the search of the glove compartment, which revealed the presence of the pistol, was not an unreasonable search under all the facts and circumstances then confronting The Ohio State University police officers. In the words of *Preston* such search was "closely related to the reason petitioner [defendant] was arrested."

This case is entirely distinguishable from *State* v. *Call* (1965), 8 Ohio App. 2d 277. There the arrest which preceded the search was for speeding, a charge totally unrelated to the search which was later conducted. While, in the instant case, the original stopping of the automobile was caused at least in part by a traffic violation, driving without lights, here the admission by defendant as to the theft had preceded the search of the glove compartment. Based upon the time of morning, the movement of defendant's automobile over driveways within the university (not public highways), the presence of the chair in the trunk, the admission by defendant of the theft of the chair, and the presence of the portable stereo in the back seat, the cir-

cumstances would authorize, if not require, any investigating officer to make a further search of the automobile. Cf. *State* v. *Bowman* (1969), 17 Ohio App. 2d 195.

We do not have in this case merely a "general exploratory search" such as was condemned in *Go-Bart Importing Co.* v. *United States* (1931), 282 U. S. 344, 75 L. Ed. 374, 51 S. Ct. 153; and *Stanford* v. *Texas* (1965), 379 U. S. 476, 13 L. Ed. 2d 431, 85 S. Ct. 506.

As noted before "what the Constitution forbids is not all searches and seizures but unreasonable searches and seizures." *Elkins* v. *United States* (1960), 364 U. S. 206, 4 L. Ed. 2d 1669, 80 S. Ct. 1437. Then, too, "the Fourth Amendment protects people, not places." *Katz* v. *United States* (1967), 389 U. S. 347, 351, 19 L. Ed. 2d 576, 88 S. Ct. 507.

If a search of the physical person is constitutional, even though prior to the time that known facts justified a lawful arrest, where such search is made in the process of "investigating suspicious circumstances" within the "legitimate investigative sphere," *Terry* v. *Ohio* (1968),—U. S.—, 20 L.Ed. 2d 889, 88 S.Ct. 1868, surely a search of an automobile is constitutional when conducted immediately following a lawful arrest, when at the time of the search it already is known that at least one stolen object is within the automobile. The fact that the officers were not in danger from the pistol, discovered in such search, at such time, since defendant was being physically held beyond the reach of anything in the car, does not make the search constitutionally "unreasonable." If the protection of the officer himself is the basic criteria of the reasonableness of the search, the policeman in *Terry* obviously could have protected *himself* by simply ignoring the activities of the defendant.

The first assignment of error is overruled.

## II.

Assignment of error number two involves the question whether the admission by defendant at the scene that he had taken the chair seen in his trunk from Lincoln Tower, a university building, should be suppressed under the prin-

ciples enunciated by the Supreme Court of the United States in *Miranda* v. *Arizona* (1966), 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A. L. R. 3d 974. In effect, it is asserted by counsel for defendant that since the defendant had already been stopped purportedly for driving without lights he thus already was in "custody," and it is asserted that all the warnings required by *Miranda* must therefore apply to such a "custodial interrogation."

In *Columbus* v. *Hayes* (1967), 9 Ohio App. 2d 38, this court held that the punishment for the offense of operating a motor vehicle while under the influence of alcohol is not "such as to bring this case within constitutional limitations on custodial interrogation."

Here, the prosecution asserts that since both offenses under consideration are misdemeanors the effect of *Hayes* is to hold that *Miranda* warnings are not required in *any* misdemeanor.

In our opinion we need not pass on this issue, concluding that even if it is assumed that the requirements of *Miranda* otherwise would apply this case does not involve a situation where, as in *Miranda,* an individual is "held for interrogation" at the police station.

Assuming an arrest for the traffic violation and assuming "custody" for such purpose at the time the police merely asked the defendant where the chair came from, all the elements of *compulsion,* relied upon by the court in *Miranda* were not present.

In this connection it must be remembered that the holding of *Miranda* constitutes an interpretation of the Fifth Amendment which provides no person shall be *compelled* in any criminal case to be a witness against himself.

In *United States* v. *Gorman* (C. C. A. 2, 1965), 355 F. 2d 151, it was held that a city detective's request to an individual, arrested on suspicion of narcotics violation, for explanation of why currency found in an attache case discovered in search of the automobile trunk had wrappers of bank which had been robbed was *merely investigative,* and the defendant's ensuing admission of the bank robbery,

though not preceded by warnings from detective, could not be considered *compelled* so as to be violative of his privilege against self-incrimination.

The opinion in *Gorman* was written by Judge Friendly. While it is true that such decision preceded *Miranda,* this same Circuit Court, after *Miranda,* held that *Miranda* warnings were not required in the "investigative stage." *United States* v. *Squeri* (C. C. A. 2, 1968), 398 F. 2d 785; *United States* v. *Mackiewicz* (C. C. A. 2, 1968), 401 F. 2d 219, certiorari denied (1968), — U. S. —, 21 L. Ed. 2d 258, 89 S. Ct. 253.

For a more complete discussion of this subject matter, see "The Fifth Amendment Tomorrow" by Judge Friendly, 37 Cincinnati Law Review 671, 712, 713 (1968).

While the decision of the United States Supreme Court in *Terry* v. *Ohio* (1968),—U. S.—, 20 L.Ed. 2d 889, 88 S. Ct. 1868, dealt primarily with the constitutionality of "stop and frisk" as it applies to the Fourth Amendment, it would appear that the very processes of "investigating of suspicious circumstances" therein necessarily required a *questioning* at the scene. There it was held "that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest," and that under certain circumstances, such is a "legitimate investigative function." Nothing is stated in *Terry* which would indicate that *Miranda* warnings would be a condition precedent to such questioning or investigation.

It is also important to note that the opinion of Mr. Chief Justice Warren in *Terry* seemed to take the position that a "violation" of "constitutional rights" does not always automatically call into play the "exclusionary rule." Note the statement, page 1876 of 88 S.Ct., that a "stern refusal" by that court to "condone such activity does not necessarily render it responsive to the exclusionary rule," and the language on the same page that "Yet a rigid and unthinking application of the exclusionary rule, in futile protest against practices which it can never be used effec-

tively to control, may exact a high toll in human injury and frustration of efforts to prevent crime. No judicial opinion can comprehend the protean variety of the street encounter, and we can only judge the facts of the case before us."

Judging the facts before us in this case, we overrule the second assignment of error.

### III

In *State* v. *Maranda* (1916), 94 Ohio St. 364, it was held that, while there must be some evidence outside of a confession tending to establish corpus delicti before the confession becomes admissible, such evidence is not required to be proof beyond a reasonable doubt or even sufficient proof to make a prima facie case; that it is sufficient "if there is *some* evidence outside of the confession that tends to prove *some* material element of the crime charged."

While the chair in question had no special markings distinguishing it from other chairs of the same manufacture sold to other persons, the testimony relative to its description and color and the testimony of Ohio State University personnel in charge of Lincoln Tower that one of twenty four chairs of such type ordered and delivered to the university was missing certainly constitutes *some* evidence *tending* to prove *some* of the material elements of the crime charged, that is the crime of petty larceny.

This third assignment of error is overruled.

For the reasons heretofore stated the judgments of the Franklin County Municipal Court are affirmed.

*Judgments affirmed.*

DUFFY, P. J., and HOLMES, J., concur.

DUFFY, P. J., concurring. The trial judge in his decision on the motion to suppress stated:

"This court will take refuge in the *Hayes case* which, in my personal opinion, is an absurdity and incorrect law. I cannot conceive I would ever find myself in the position that I would be joyfully following the case which I believe

to be completely wrong. However, the only greater absurdity than to follow the *Hayes case* is to suppress evidence in this case and return to this defendant the chair which by his own admission belongs to The Ohio State University, and the weapon. I am not proud of the conduct of this court at this time and it is a matter of considerable embarrassment to me to put it on the record.

"I deny the motion of the defendant solely and exclusively on the basis of the *Hayes case*. As a matter of law and professional standing, Mr. Sroufe, this certainly ought to illustrate to somebody how ridiculous the *Hayes case* is. My throat gorges with the idea of protecting this defendant. The motion is overruled."

A review of the *Hayes case* (*Columbus* v. *Hayes,* 9 Ohio App. 2d 38) will show that we were limiting the opinion only to the offense involved in that case—operating a vehicle while under the influence of alcohol. In *Mentor* v. *Giordano,* 9 Ohio St. 2d 140, the Supreme Court stated, *"Generally, each 'drunken driving' case is to be decided on its own particular and peculiar facts."* The *Hayes case* should not be interpreted to apply to all misdemeanor cases.

While Judge Leach has set out the law applicable to the motion to suppress, I concur in the affirmance for the further reason that on the trial of the case the cross-examination of a prosecution's witness disclosed that the defendant gave permission to search the car.