THE STATE OF OHIO, APPELLEE, *v.* GRAVIN, APPELLANT.

[Cite as State v. Gravin (1974), 44 Ohio App. 2d 303.]

(No. 995—Decided July 30, 1974.)

*Mr. Joseph J. Baronzzi,* prosecuting attorney, for appellee.

*Mr. William J. Davis,* for appellant.

DONOFRIO, J. This is an appeal from the Court of Common Pleas, Columbiana County, Ohio. The defendant, appellant herein, was arrested at about 12:15 a. m. on May 25, 1973, by the Columbiana County Sheriff's Department. The facts evidenced by the record culminating in this arrest are as follows:

Sheriff Russell VanFossan in a communication with a member of the Cleveland Police Department, a Detective Harry Sargeant, was told that Detective Sargeant had received an anonymous telephone call from a woman in a bar on the west side of Cleveland. The detective did not

know the identity of the caller. The information received by the sheriff of Columbiana County was that the anonymous caller stated to Detective Sargeant that she overheard a conversation that there would be an attempt to break out of the Columbiana County Jail a prisoner there named Mishelek. Thereafter, the sheriff summoned his officers and had a briefing to prepare them to secure the jail against any attempt to break into it, and he also had his officers post themselves in certain areas of the village of Lisbon so that they could set up a surveillance around the Columbiana County Jail area. At about 11 p. m. that evening, the sheriff's department noticed two cars that had entered town, a 1964 Ford, which was driven by a woman, and a 1968 Ford Thunderbird, which was driven by the defendant. The two automobiles bore what the sheriff's officers determined to be Cleveland, Ohio, license plates. An officer relayed the license plate information to the computer center in the jail building and such was transferred to the computer in Columbus, Ohio. Subsequently, the computer sent out the information that one of the automobiles was registered in the name of one Mary Jane Mishelek. It later developed that she was the female seen in the 1964 Ford and was a sister of the prisoner, Mishelek, in the Columbiana County Jail.

Deputy sheriffs kept the automobiles under surveillance as they drove on the streets of Lisbon, and they observed the woman park the 1964 Ford facing east on West High Street near the Corner of North Market Street. The county jail building is located on Market Street. The woman got out of the 1964 Ford, entered the 1968 T-Bird with the defendant and they drove around the village of Lisbon, stopping at a restaurant. After leaving the restaurant, defendant drove around the village some more. Finally, the defendant and the female returned to the 1964 Ford, and the female got out of the car driven by the defendant and into the 1964 Ford. The sheriff's officers next noticed the 1964 Ford parked on Chestnut Street, a block and a half west of where the county jail is located, and a while later the 1968 T-Bird driven by the defendant containing the female pulled up behind the 1964 Ford. The deputy sher-

iffs had the two persons under surveillance for approximately one hour as they travelled around the side streets in the area of the county jail building. As the two subjects under surveillance sat there for approximately ten to fifteen minutes, the sheriff decided at this point to intervene and had his deputies approach the car and ask the occupants to get out of the car. A deputy sheriff testified that from the opened car door he noticed a gun under the seat of the car.

Thereafter, a search of the car that the defendant had been driving produced the following items: a black plastic bag containing two three-quarter length black coats; one maroon sweatshirt; one Jerome-Alexander blonde wig; one black felt hat; one black Banlon sweater; one pair of black cotton trousers; one black leather wallet, containing the following: an ID card, a Cuyahoga Community College ID card, in the name of David F. Olin; a Social Security card, No. 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; a Kawasaki Service card, in the name of D. Olin Fortune; an operator's license in the name of David Frederick Olin; a Manitoba, Canada, birth certificate, in the name of David Frederick Olin; an immigration card, No. A8352321, in the name of David F. Olin; a 1971 registration card for a 1971 Kawasaki motorcycle in the name of David Olin; a title for a 1971 Kawasaki motorcycle in the name of David Olin; a draft card in the name of David Frederick Olin. There was also a wire loop containing 62 General Motor's auto keys, one industrial locke key, one hudson key, and one national key, six orange Nicholson hacksaw blades; an Arco map of Pennsylvania; a 1971 Ohio highway map, with Lisbon circled in ink; one Springfield, J. Stevens Arms Company, 12 gauge sawed-off shotgun; a brown paper bag containing seven Remington Peters 12-gauge shotgun shells, one Revelation 12-gauge shotgun shell, six Sears 12-gauge, No. 5 shotgun shells.

The following are items found on the person of William Gravin: a pair of sunglasses, a pair of green plastic gloves; one Federal, high-powered, 12-gauge shotgun shell; one Remington Peters 12-gauge shotgun shell; one linoleum knife; 10 .38 caliber, special, shells; one .38 caliber, special, Federal shell; one .38 caliber, special, Rem-UMC

shell; and one .38 caliber Colt wadcutter. A Smith and Wesson, .38 caliber pistol was found under the front seat. The defendant at that time gave his name as William Gravin; later the sheriff's department determined him to be one William Michael Rusnak.

On June 27, 1973, the defendant was indicted on four counts by the Columbiana County Grand Jury, April term. The indictment charges that defendant, on or about May 25, 1973, did:

1. Attempt to convey articles into a place of confinement to aid escape;

2. Have burglar's tools in his possession;

3. Carry a concealed weapon; and

4. Have in his possession a sawed-off shotgun without a permit.

On June 29, 1973, defendant entered a plea of "not guilty" to all four counts of the indictment. On September 14, 1973, a hearing was held on defendant's "Motion to Suppress" physical evidence and his oral statement. The court overruled the motion.

The case was tried to a jury and the jury returned verdicts of guilty on all four counts. The court then sentenced defendant to the Ohio State Penitentiary. It is from the verdict of the jury and the sentence of the court that the defendant brings this appeal.

On behalf of defendant, there are two briefs filed: one by the attorney for the defendant, setting forth nine assignments of error, and a brief written by a prisoner friend of the defendant and submitted by defendant's attorney to be considered and made a part of the briefs and assignments of error as written by the attorney for the defendant. The second brief and assignments of error sets forth, as does the attorney's brief, an assignment of error relative to the denying of the "motion to suppress" physical evidence seized in the search of the automobile and person of the defendant. Also raised as error were instructions by the court relative to aiders and abettors, also covered by the attorney for the defense. In addition thereto, the brief submitted by the defendant lists as an assignment of error that his trial counsel was ineffective in several areas, deny-

ing defendant his right to a fair trial. All of the assignments of error except the last will be discussed as being in the brief submitted by defendant's attorney, William J. Davis.

The first assignment of error states:

"The court erred in not granting the appellant's motion to suppress any physical evidence seized and to be used in evidence."

Defendant argues that there was no probable cause for an arrest and the sheriff's department did not have a warrant for the search of the 1968 T-Bird which the defendant was driving. We do not agree. Under the facts set forth at the beginning of this opinion, the sheriff's officers had probable cause to search the automobile the defendant was driving. It is understood that the anonymous information received by the sheriff of Columbinana County was not by one that can be considered a reliable informer. However, as a piece of information received by the sheriff, it was subsequently reinforced by the appearance of two automobiles with license plates from the Cleveland area, the maneuvering of the cars near the jail building, and the fact that one of the cars was registered to a female with the same name as a prisoner in the county jail, who allegedly was to be broken out of jail. These facts gave the officers probable cause to search the automobile for contraband and other evidence that would likely be used in effecting a jail break. The arrest of the defendant then was contemporaneous with the search, and provided sufficient probable cause for the arrest. As authority for this holding, see *State* v. *Madgett* (1970), 22 Ohio St. 2d 148. The court, in quoting *Chimel* v. *California* (1969), 395 U. S. 752, 23 L. Ed. 2d 685, stated, at page 152:

" 'Our holding today is of course entirely consistent with the recognized principle that, assuming the existence of probable cause, automobiles and other vehicles may be searched without warrants "where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." ' "

In *State* v. *Twitty* (1969), 18 Ohio App. 2d 15, para-

graphs two and three of the syllabus state:

"2. A warrantless search of an automobile, which discloses a pistol in the glove compartment, is not constitutionally unreasonable merely because, at the time of the search, the person arrested was being held in physical custody in a nearby police cruiser, and thus a search at the particular time was not required either for the protection of the person searching or to prevent the destruction of evidence of a crime.

"3. The test of the constitutionality of a search is not the practicability of procuring a search warrant, but the reasonableness of the search itself."

In the United States Supreme Court case of *Chambers* v. *Maroney* (1970), 399 U. S. 42, headnote three of 26 L. Ed. 2d 419, states:

"The validity of an arrest is not necessarily determinative of the right to search an automobile if there is probable cause to make the search."

Headnote six of the *Chambers* case states:

"For purposes of the Fourth Amendment, there is a constitutional difference between houses and automobiles; automobiles and other conveyances may be searched without a warrant in circumstances which would not justify the search without a warrant of a house or an office, provided that there is probable cause to believe that the automobile contains articles which the officers making the search are entitled to seize."

Headnote seven of the *Chambers* case states:

"Automobiles and other vehicles may be searched without a warrant where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought."

Headnote nine of the *Chambers* case states:

"An immediate search without a warrant is constitutionally permissible where there is probable cause to search an automobile stopped on the highway, since (1) the automobile is movable, (2) the occupants are alerted, and (3) the automobile's contents may never be found again if a warrant must be obtained."

In the instant case, the sheriff's officers were acting with sufficient probable cause to search the automobile in question. They had more than a mere suspicion and under the circumstances the officers' actions were nothing more than good diligent police work at the proper time.

It may also be noted at this juncture, that the United States Supreme Court has given police officers the authority, in appropriate circumstances and where such is conducted in an appropriate manner, to approach a person for the purpose of investigating possible criminal behavior even though there is no probable cause to make an arrest. In *Adams* v. *Williams* (1972), 407 U. S. 143, headnote three of 32 L. Ed. 2d 612, states:

"The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape."

We, therefore, overrule defendant's first assignment of error.

Defendant's second assignment of error states:

"The Court erred in not granting appellant's motion to suppress any oral statements made by the appellant after his arrest."

It is conceded by the state that it has a heavy burden to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. *Miranda* v. *Arizona* (1966), 384 U. S. 436, 475.

This motion to suppress the oral statement made by the defendant was heard by the trial court, and contrary to defendant's brief was not entirely overruled. The court held:

"Insofar as what was said by this defendant spontaneously, without being questioned, by the sheriff, or his deputies, or Mr. Baronzzi, after he had requested to buy a lawyer, I'll permit that to go to a jury. All other statements made by this defendant, as a result of questioning by the sheriff, or the prosecutor's office, or any law enforcement official, I will suppress; and that will be my order."

The defendant expressed his desire of not having his

comments recorded or taken down in writing. He had received ample warnings that met the *Miranda* case requirements. However, he blurted out unsolicited oral statements that may have implicated him in the crime. The record discloses that the trial court had a thorough hearing on this question and ruled the position of unsolicited statements to be admissible at the trial. We hold that the trial court was correct in its action and did not commit prejudicial error relative to this second assignment of error. Defendant's second assignment of error is, therefore, overruled.

Defendant's third assignment of error states:

"The Court erred in not directing the verdict for the appellant on the first count of the indictment after the state completed its case in chief, and the verdict thereon is not sustained by the evidence."

The first count of the indictment charges:

"(Defendant) * * * did unlawfully attempt to convey into the Columbiana County Jail, Lisbon, Ohio, certain items to effect the escape of James Richard Mishelek and Richard Michael Temple, prisoners lawfully detained therein.

"Contrary to Section 2917.14, Revised Code of Ohio, and against the peace and dignity of the State of Ohio."

The evidence, as presented in the record, after the State completed its case in chief, indicates that it was sufficient at that point to sustain a conviction. The activities of the defendant, the distance travelled, the evidence presented from the search of the car defendant was driving, the placing of the cars near the county jail, and the activities observed by the sheriff's officers that evening were all actions that could be determined to be overt activities on the part of the defendant. To illustrate this point, given the facts of this case, what then would have been the next move of the defendant? To maintain his argument that up to that point there was no overt act, must the sheriff have waited until the defendant seized the gun and began a shootout at the county jail. The defendant's actions and activities as evidenced by the state's case, at this point, indicate that they were far from a planning stage and are overt acts that constitute an attempt in violation of R. C. 2917.14. De-

fendant's third assignment of error is, therefore, overruled.

Defendant's fourth assignment of error states:

"The Court erred in not directing the verdict for the appellant on the second count of the indictment after the state completed its case in chief, and the verdict thereon is not sustained by the evidence."

The second count of the Indictment charges:

"(Defendant) * * * unlawfully did have in his possession certain tools, implements, or other things, used by burglars for housebreaking, forcing doors, windows, locks or buildings or other places where goods, wares, merchandise or money are kept, with intent of using such tools or implements burglariously.

"Contrary to Section 2907.11, Revised Code of Ohio, and against the peace and dignity of the State of Ohio."

Relative to this assignment of error, the defendant, at the close of the state's case in chief, made a motion for a directed verdict which was overruled. The state developed two inconsistent theories against the defendant. The first was that the defendant intended to convey the tools to a prisoner in the Columbiana County Jail and/or to aid in effecting the escape of that prisoner. The second theory is that the defendant possessed the tools with the intent to use them burglariously. The same circumstantial evidence was put forth by the state to support both theories. However, the evidence produced supported the first theory by virtue of all the circumstantial evidence and practically none on behalf of the second theory. If the words "with intent to use them burglariously," found in the statute, are synonymous with the action charged in the first count of the indictment—"did unlawfully attempt to convey into the Columbiana County Jail * * * certain items to affect the escape"—the court's ruling would have been correct. However, as much as we try to rationalize the circumstantrial evidence presented to fit both charges, we fall short of the conclusion that the evidence as to the second count of the indictment is sufficient to sustain a conviction. The syllabus of *State* v. *Kulig* (1974), 37 Ohio St. 2d 157, reads:

"Circumstantial evidence relied upon to prove an es-

sential element of a crime must be irreconcilable with any reasonable theory of an accused's innocence in order to support a finding of guilt.''

In *State* v. *Cimpritz* (1952), 93 Ohio App. 407, the court at page 411 stated:

''The intention of the defendant to use said implements burglariously is an essential element of the offense charged in the indictment and the defendant should not be convicted of such offense without such proof.''

Therefore, we find that the circumstantial evidence presented as to the second count of the indictment is insufficient, and the court should have granted defendant's motion for a directed verdict at the close of the state's case in chief. We therefore sustain defendant's fourth assignment of error.

Defendant's fifth assignment of error states:

''The Court erred in not directing the verdict for the appellant on the third count of the indictment after the state completed its case in chief, and the verdict thereon is not sustained by the evidence.''

This assignment of error is directly connected with the first and second assignments of error. Defendant argues that the court should have granted defendant's motion to suppress physical evidence and oral statements, and had such motion been granted there would not have been sufficient evidence to sustain a conviction. For the same reasons stated in the rulings on the first and second assignments of error, we overrule defendant's fifth assignment of error.

Defendant's sixth assignment of error states:

''The Court erred in not directing the verdict for the appellant on the fourth count of the indictment after the state completed its case in chief, and the verdict thereon is not sustained by the evidence.''

This argument is the same as that presented in the fifth assignment of error. We overruled defendant's fifth assignment of error and, therefore, overrule the sixth assignment of error. It may be noted that the fourth count of the indictment concerned the possession of a sawed-off shotgun without a permit or the permission of the Adjutant

General, and the defendant stipulated that he did not have a permit.

Defendant's seventh assignment of error reads:

"The prosecutor committed misconduct during the trial that was prejudicial to the appellant."

Defendant contends that the prosecutor brought out information during his opening statement which was collateral to the guilt of the defendant and concerned activities of two men named Mishelek and Temple, who were prisoners in the Columbiana County Jail, and commented on the final argument on the guilt and collateral activities of the two. We have read the record and find that these comments were not prejudicial, especially in light of the fact that the court properly charged the jury as to what they were to consider and not to consider as evidence. Further, a reading of the record does not indicate that the defendant objected at the time the statements were made. Defendant's seventh assignment of error is, therefore, overruled.

Defendant's eighth assignment of error alleges:

"The Court erred in giving any instruction to the jury concerning the application of the aider and abettor statute, since the appellant was charged only as a single principal in the indictment."

Under Ohio law, an aider and abettor may be prosecuted as if he were the principal offender. The defendant was asked specifically by the court, after charging, if he was dissatisfied with the charge; the defendant stated unequivocally that he was satisfied with the charge, and no objection was put forth by the defendant. Defendant's eighth assignment of error is, therefore, overruled.

Defendant's ninth assignment of error states:

"The Court erred in trying the appellant in his prison clothing and so violated his fundamental right to a presumption of innocence."

The case put forth by defendant to sustain his argument on this assignment of error is *Hernandez* v. *Beto* (C. A. 5, 1971), 443 F. 2d 634. However, in that case the court also said that a defendant may not remain silent, willingly go to trial in prison garb, and then claim error; the fact situation therein made the court decide that he did not

voluntarily waive his right to object. The facts of the instant case are not the same. In the instant case, the defendant and his attorney remained silent and willingly went to trial, the defendant wearing prison clothing. There was no mention of the defendant's unwillingness until after the finding of "guilty." Defendant's ninth assignment of error is, therefore, overruled.

In the additional brief that was submitted by the prisoner himself, one assignment of error appears that was not presented by counsel, as follows: "Counsel for the appellant was ineffective in several areas that denied the appellant his rights to a fair trial." We assume that the defendant is putting forth the contention that he had incompetent counsel. We know of no case that considers "ineffective counsel." Defendant argues that counsel was ineffective because of his failure to object to the inflammatory and prejudicial opening and closing arguments to the jury by the prosecuting attorney. He maintains that counsel was also ineffective when he stipulated to the fact that defendant had not secured a permit from the Adjutant General, especially when viewed in the light that an illegal search had been committed, and further when counsel for the defendant stated that he was satisfied with the charge of the court.

We find from a review of the record that defendant received adequate representation from his counsel. Defendant is now asking this court to look back with hindsight and view the trial attorney's strategy as ineffective and the denial of a fair trial. We do not agree. That which may seem good strategy to the attorney at the time, may not later appear to be effective in light of a verdict of "guilty" returned by the jury. We find that the defendant received adequate representation, and find no evidence of incompetency on behalf of his attorney. This assignment of error is, therefore, overruled.

For the foregoing reasons, the verdict and judgment of the Court of Common Pleas is affirmed, except with regard to that portion of the verdict and judgment relating to the second count of the indictment—"possession of burglary tools contrary to Section 2907.11." That finding is re-

versed and the cause is remanded to the Court of Common Pleas with instructions to proceed with the proper entry of acquittal on the second count.

*Judgment affirmed in part and reversed in part and cause remanded.*

LYNCH, P. J., and O'NEILL, J., concur.