JOURNAL ENTRY AND OPINION
{¶ 1} Pursuant to R.C. 2945.67 and Crim. R. 12, the State of Ohio appeals from the order of the trial court which suppressed evidence obtained in connection with the stop of a vehicle in which defendant Ali Jabbaar was a passenger. For the reasons set forth below, we affirm.
 {¶ 2} On July 28, 2006, defendant and co-defendant Lee Jabbaar were indicted
 {¶ 3} pursuant to a three-count indictment which charged them with trafficking between 25 and 100 grams of crack cocaine, possession of crack cocaine, and possession of criminal tools. Defendant pled not guilty and subsequently moved to suppress all evidence obtained against him. Defendant argued that the search followed the improper traffic stop of a vehicle in which he was a passenger and that there was no probable cause to search a can in which the drugs were found.
 {¶ 4} The matter proceeded to an evidentiary hearing on January 10, 2008.[1] The state's evidence indicated that, at around 2:00 p.m., on June 22, 2006, Cleveland Police Officer Joseph Cavanaugh observed a truck speeding on West 94th Street. According to the officer, the vehicle then failed to stop at a stop sign at the intersection of West 94th and Denison Avenue. The officer stopped the vehicle and, *Page 2 
as he approached, he observed defendant, the passenger, reach his right arm across his body to the passenger area behind him. Officer Cavanaugh testified that, based upon his training and experience, he interpreted the movement as furtive and he believed that the passenger was attempting to conceal something in the rear area of the truck cab.
 {¶ 5} Officer Cavanaugh asked the driver, Lee Jabbaar for his license. Upon seeing the license, Officer Cavanaugh noted that Lee Jabbaar is a drug dealer. He then recognized defendant as an individual at Lee Jabbaar's home during a police raid.
 {¶ 6} Officer Cavanaugh ordered Lee Jabbaar out of the vehicle and determined that he would have him wait in the squad car. He patted Jabbaar down and felt a "big bulge in his pocket." Officer Cavanaugh reached into the pocket and removed a large wad of money. Officer Cavanaugh testified that Jabbaar had $974. He asked Jabbaar where he had gotten the money. Jabbaar provided no explanation and admitted that he was not working.
 {¶ 7} Officers Kenneth Florjancic and Officer Flores arrived on the scene and Officer Cavanaugh informed them that defendant had put something in the back seat.
 {¶ 8} Officer Florjancic testified that the only item in the rear of the truck cab area was a can of WD 40, a liquid lubricant. According to Officer Florjancic, *Page 3 
pursuant to his training with the High Intensity Drug Trafficking Agency, contraband may be hidden in falsely marked containers which have false bottoms. Florjancic picked up the can and shook it. He heard a thumping sound as he shook the container, and determined that it contained a solid rather than a liquid. He then opened the container and found cocaine and marijuana.
 {¶ 9} The trial court found as follows:
 {¶ 10} "Officer Cavanaugh testified that he saw the defendant * * * make a furtive movement * * *.
 {¶ 11} "Officer Cavanaugh testified that he had no intention at that juncture of making that observation of questioning the passenger, did not have any intention of arresting anyone for anything at that time, and his sole intention was to give the driver of the motor vehicle a citation for going through the stop sign.
 {¶ 12} "It was not clear from the evidence whether Officer Cavanaugh drew a connection between the alleged motion of the passenger and the presence of the police car on the scene. * * *
 {¶ 13} "[The facts of State v. Bobo (1988), 37 Ohio St.3d 177,524 N.E.2d 489] are fairly different from the facts we have here where we have an encounter at two o'clock in the afternoon, where the furtive movements — and I'm using that generally and a little bit loosely — weren't necessarily tied to the encounter. * * *
 {¶ 14} "* * * *Page 4 
 {¶ 15} "So while this is good instinctual police work, the facts, the objective facts do not justify removal of the driver from the vehicle or further investigation.
 {¶ 16} "* * * What we have with respect to the passenger is guilt by association."
 {¶ 17} (Tr. 103-113).
 {¶ 18} The state now appeals and assigns the following error for our review:
 {¶ 19} "The trial court erred when it granted the appellee-defendant's motion to suppress evidence because, even without a warrant and based on their observations, training and experience, officers from the Cleveland Police Department had probable cause to conduct a search of the automobile and can that they located in the vehicle under the automobile exception."
 {¶ 20} With regard to procedure, we note that "[w]e are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." State v. Retherford (1994), 93 Ohio App.3d 586, 592,639 N.E.2d 498. The trial court's legal conclusions, however, are afforded no deference, but are reviewed de novo." State v. Russell (1998),127 Ohio App.3d 414, 416, 713 N.E.2d 56.
 {¶ 21} As to the substantive law, we note that the Fourth Amendment "provides protection to the owner of every container that conceals its contents from plain view." *Page 5 United States v. Ross (1982), 456 U.S. 798, 822-823, 72 L.Ed.2d 572,102 S.Ct. 2157. Warrantless searches are per se unreasonable, and therefore illegal, unless the state successfully demonstrates one or more of the several recognized exceptions to the Fourth Amendment warrant requirement." Katz v. United States (1967), 389 U.S. 347, 357,88 S.Ct. 507, 19 L.Ed.2d 576.
 {¶ 22} In Terry v. Ohio (1968), 392 U.S. 1, 20 L.Ed.2d 889,88 S.Ct. 1868, United States Supreme Court held that a police officer stop and detain an individual if the officer possesses a reasonable suspicion, based upon specific and articulable facts, that criminal activity "may be afoot." Id., see, also, State v. Andrews (1991), 57 Ohio St.3d 86,565 N.E.2d 1271. To justify an investigative stop, the officer must be able to articulate specific facts which would warrant a reasonably prudent police officer to believe that the person stopped has committed or is committing a crime. See, Terry, supra, at 27. *Page 6 
 {¶ 23} Similarly, in State v. Bobo, supra, the court held that where a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others. In determining the reasonableness of the officer's belief, courts examine the totality of the circumstances, including the following factors: (1) whether the location of the contact is an area of high crime or high drug activity, (2) the suspect's non-compliance with an officer's orders, (3) the time of the occurrence, (4) the officer's experience, (5) the lack of backup for the officer, (6) the contact's location away from the police cruiser, (7) whether the suspect is fleeing the officer or the scene, (8) any furtive movements by the suspect, (9) the precautionary measures taken by the officer, and (10) the suspected offense. Id.
 {¶ 24} Applying the principles set forth in Terry and Bobo to this matter, we concur with the trial court's conclusion that "the objective facts do not justify removal of the driver from the vehicle or further investigation." After obtaining Lee Jabbaar's license, Officer Cavanaugh noted that Lee Jabbaar is a drug dealer and remembered that defendant was present during a raid on Jabbaar's home. The officer ordered Lee Jabbaar out of the car then conducted a patdown which yeilded a large sum of money. We cannot say that the record manifests reasonable suspicion, based upon specific and articulable facts, that criminal activity "may be afoot." Further, although the officers had prior experience with the occupants of the car and
also observed defendant make what may what may be considered a furtive gesture, the record does not contain sufficient factors to justify a protective search. As there was no basis to justify removal of the driver from the vehicle or further investigation, the subsequent and ensuing search of the car and can must likewise fail.
 {¶ 25} This cause is affirmed.
It is, therefore, considered that said appellee recover of said appellant its costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, JUDGE
SEAN C. GALLAGHER, P.J., and MARY EILEEN KILBANE, J., CONCUR
[1] The trial court determined that defendant had standing to challenge the search and we concur with this determination SeeBrendlin v. California (2007), U.S., 127 S. Ct. 2400; 168 L.Ed.2d 132
(when a police officer makes a traffic stop, the driver of the car and passenger are seized within the meaning of the Fourth Amendment and the passenger may challenge the constitutionality of the stop). *Page 1