[Cite as *Westlake v. Gordon*, 2014-Ohio-3031.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100295**

## CITY OF WESTLAKE

PLAINTIFF-APPELLANT

vs.

## NICOLE GORDON

DEFENDANT-APPELLEE

**JUDGMENT:**
REVERSED AND REMANDED

Criminal Appeal from the
Rocky River Municipal Court
Case No. 13 CRB 0297

**BEFORE:**  S. Gallagher, P.J., Kilbane, J., and Stewart, J.

**RELEASED AND JOURNALIZED:**  July 10, 2014

**ATTORNEYS FOR APPELLANT**

John Wheeler
Director of Law

BY:   Sean F. Kelleher
Assistant Director of Law
City of Westlake
27700 Hilliard Blvd.
Westlake, OH   44145


**ATTORNEY FOR APPELLEE**

Timothy J. Kucharski
1200 W. 3rd Street
Suite 190
Cleveland, OH   44113

SEAN C. GALLAGHER, P.J.:

{¶1} The city of Westlake appeals from the municipal court's judgment granting the motion to suppress filed by defendant Nicole Gordon ("Gordon"). For the following reasons, we reverse and remand.

{¶2} On February 11, 2013, Gordon was charged in a six-count indictment in Rocky River Municipal Court. Counts 1 and 2 charged her with attempted possession of dangerous drugs. Count 3 charged her with receiving stolen property. Counts 4, 5, and 6 charged her with possession of criminal tools. On April 22, 2013, Gordon filed a motion to suppress, in which she argued that the evidence found in her car should be suppressed as the result of an unlawful search. The trial court granted the motion to suppress, and this appeal immediately followed.

{¶3} On February 6, 2013, Westlake police officer Jeremiah Bullins ("Bullins") was working as an employee of Crocker Park shopping complex, assisting with security detail. Bullins was dressed in full uniform and operated a city police cruiser. At approximately 7:30 p.m., he observed two vehicles driving the wrong way on a one-way street. The first car drove on, and Bullins initiated a traffic stop on the second vehicle. Bullins testified that "[a]s I was stopping the vehicle[,] I could see the back seat passenger was making furtive movements, he was moving around on the ground."

{¶4} Bullins approached the driver, later identified as Gordon, and asked for her identification and insurance information. Bullins also asked the rear passenger, later identified as M.H., who was 15 years old at the time, to step out of the vehicle. Bullins

and M.H. stood outside, near Bullins's police cruiser. Bullins testified that he asked M.H. what he was doing in the backseat. M.H. told him that "he was stuffing a bag under the seat." Bullins asked him why, and M.H. "couldn't explain it." Bullins then asked M.H. if he would show him the bag that he stuffed under the seat. M.H. complied and gave Bullins the bag. Bullins recognized the bag as a "booster bag," a common tool shoplifters use to defeat store security sensors. Bullins described the booster bag as actually two bags, with one bag inside of the other bag. The inside bag is lined with duct tape. Bullins testified that the booster bag was empty.

{¶5} At that point, Bullins called in another unit for a probable-cause search. Bullins put Gordon in the back of his police cruiser and M.H. in the back of the other cruiser while the officers completed the search. Bullins testified that during the search, they found a pry bar and small screwdriver in the driver's side door, another booster bag, two pairs of jeans, and a shirt in the car. The officers also found drugs in Gordon's purse, which was inventoried pursuant to her arrest. Bullins testified that Gordon later admitted to him that she owned one of the booster bags.

{¶6} Bullins testified that he had no evidence that the bags were used to commit a theft offense that day, nor did he have notice that anyone was shoplifting at Crocker Park that day. When asked on cross-examination to describe what evidence Bullins had of any crime occurring, he replied: "[t]he fact that [M.H.] was reluctant to tell me about the bag and then when [M.H.] pulled out the bag and I see it's a lined, duct taped bag, that is a known booster bag, that I believe is a criminal tool."

**{¶7}** On August 9, 2013, the trial court issued a written opinion, granting Gordon's motion to suppress. The court found that

> [i]n the instant case, there is no evidence to go along with [M.H.] moving around on the ground[;] that [Gordon's] vehicle fit a description of a car involved in a crime; that a dispatch ever came to the office[r] that a crime was committed; that the vehicle had been spotted in the area before and though it was stopped for a traffic violation[;] that the officer recognized [Gordon] as one who had been previously arrested for theft in the area.
>
> * * *
>
> In view of the lack of the presence of sufficient probable cause, the search of [Gordon's] automobile was unreasonable in its scope and intensity and unconstitutionally permitted.

**{¶8}** The city now appeals and, in its sole assignment of error, claims that the trial court erred when it suppressed the evidence seized from Gordon's car because Bullins had probable cause to believe that the vehicle contained contraband in light of the criminal tool voluntarily turned over by M.H. We find merit to the city's argument.

**{¶9}** Appellate review of a suppression ruling involves mixed questions of law and fact. *See State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71. When ruling on a motion to suppress, the trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight of the evidence. *See State v. Mills*, 62 Ohio St.3d 357, 582 N.E.2d 972 (1992); *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). An appellate court must accept the trial court's findings of fact as true if they are supported by competent and credible evidence. *Burnside* at ¶ 8. The appellate court must then determine, without any deference to the trial court, whether the facts satisfy the applicable legal standard. *Id.*

{¶10} The Fourth Amendment to the United States Constitution does not prohibit all searches and seizures, only unreasonable ones. "It is well established that searches conducted without a warrant are per se unreasonable, subject to certain 'jealously and carefully drawn' exceptions." *State v. Smith*, 124 Ohio St.3d 163, 2009-Ohio-6426, 920 N.E.2d 949, ¶ 10, citing *Jones v. United States*, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958); *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The defendant bears the initial burden to demonstrate that a search was conducted without a warrant. *Coolidge* at 455; *Xenia v. Wallace*, 37 Ohio St.3d 216, 524 N.E.2d 889 (1988). Once the defendant can demonstrate that the search was warrantless, the burden then shifts to the government to demonstrate that the search fell within an exception to the warrant requirement. *Xenia* at 218, citing *State v. Kessler*, 53 Ohio St.2d 204, 373 N.E.2d 1252 (1978).

{¶11} In the instant case, there is no dispute that the search of Gordon's car was conducted without a warrant or that Gordon was lawfully stopped for a traffic violation. The trial court, in its written opinion, relied on *Kessler* and granted Gordon's motion to suppress, concluding that the furtive movements of M.H. alone were insufficient to justify the probable-cause search of the vehicle. In *Kessler*, the Ohio Supreme Court held:

> Where police officers observe an automobile resembling one mentioned in connection with recent burglaries, then follow it after noticing the passenger in the automobile appear to duck down out of sight, and thereafter stop the automobile for a minor traffic violation and arrest the driver, who cannot produce a driver's license or proof of ownership of the automobile and whom the officers recognize as having been previously arrested for burglaries in the area, a subsequent limited search by the officers of the front-passenger section of the automobile without a warrant

is not unreasonable and is constitutionally permissible within the ambit of the United States Supreme Court decisions in *Carroll v. United States*, 267 U.S. 132[, 45 S.Ct. 280, 69 L.Ed. 543 (1925)]; *Dyke v. Taylor Implement Mfg. Co.*, 391 U.S. 216[, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968)]; *Chambers v. Maroney*, 399 U.S. 42[, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970)]; and *Coolidge v. New Hampshire*, 403 U.S. 443[, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)].

*Id.* at the syllabus.

{¶12} Initially, it is important to note that most of the cases involving searches subsequent to traffic stops turn on minute differences in conduct often subject to varying interpretations that lead to either supporting or rejecting the police conduct. This case is no exception.

{¶13} The trial court's reliance on *Kessler* was misplaced. *Kessler* stands for the proposition that a mere furtive gesture, standing alone, does not create probable cause to stop and search a vehicle without a warrant. *Kessler* at 208-209. That is not what occurred here.

{¶14} The furtive movement here did not result in a search. It resulted in the removal of the passenger from the vehicle. "Once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). Furthermore, an officer may order a passenger to get out of the vehicle pending completion of the stop. *Maryland v. Wilson*, 519 U.S. 408, 414, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997).

{¶15} Once the passenger was out of the vehicle, the officer asked the passenger what he had been doing. The passenger answered that he had been stuffing a bag under the seat. The officer then asked if he could see the bag. M.H. voluntarily retrieved it from under the seat and gave it to the officer, who immediately recognized it as a booster bag. Despite M.H.'s testimony at the suppression hearing that the officer retrieved the bag from under the seat, the officer testified, and dash cam video showed, that M.H. retrieved the bag from under the seat.

{¶16} Despite the presence of a uniformed officer engaged in a discussion with a passenger of a stopped auto, this conduct is not the type of warrantless search prohibited by the Fourth Amendment. The passenger was free to say nothing and to decline the officer's request to see the bag. Once it was turned over and the officer recognized it as a criminal tool used for shoplifting, probable cause existed for the subsequent vehicle search. *State v. Jackson*, 11th Dist. Lake No. 2011-L-107, 2012-Ohio-2123 (the voluntary relinquishment of evidence establishing criminal activity, coupled with furtive movements during the investigative stop, establishes probable cause for a search).

{¶17} In short, the current factual scenario differs from those where the furtive conduct is the only basis for the warrantless search, such as described in *State v. Jabaar,* 8th Dist. Cuyahoga No. 90922, 2008-Ohio-5268. In *Jabaar* the officer described similar furtive conduct, as compared to the conduct in this case, leading to the direct search of the vehicle and recovery of a falsely marked container that contained drugs. No such search took place in the present case. Again, the criminal tool establishing probable cause that a

crime occurred or was occurring was retrieved by a passenger of the car and turned over to the officer, justifying the warrantless search of the vehicle. *Jackson*, 11th Dist. Lake No. 2011-L-107, 2012-Ohio-2123. The city's argument is sustained.

{¶18} The decision of the trial court granting the motion to suppress is reversed, and the case is remanded for further proceedings.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER,  PRESIDING JUDGE

MELODY J. STEWART, J., CONCURS;
MARY EILEEN KILBANE, J., DISSENTS (WITH SEPARATE OPINION)

MARY EILEEN KILBANE, J., DISSENTING:

{¶19} I respectfully dissent. I would affirm the court's judgment granting Gordon's motion to suppress.

{¶20} In deciding a motion to suppress, we "must defer to the trial court's factual findings, if those are supported by the record. *See*, *e.g.*, *State v. Wilson* (1996), 74 Ohio St.3d 381, 390, 659 N.E.2d 292, 303." *State v. Keene*, 81 Ohio St.3d 646, 656, 693 N.E.2d 246 (1998).

**{¶21}** Here, the trial court issued a five-page written opinion finding that:

[i]n the instant case, there is no evidence to go along with [M.H.] moving around on the ground[;] that [Gordon's] vehicle fit a description of a car involved in a crime; that a dispatch ever came to the office[r] that a crime was committed; that the vehicle had been spotted in the area before and though it was stopped for a traffic violation[;] that the officer recognized [Gordon] as one who had been previously arrested for theft in the area.

An officer must have "more than a mere suspicion"; he must have reasonable cause to believe that the automobile driven by defendant contained contraband subject to seizure or concealed the instrumentality or evidence of a crime before he made the warrantless search of that automobile. *State v. Gravin*[, 44 Ohio App.2d 303, 338 N.E.2d 539 (7th Dist.1974).]

In view of the lack of the presence of sufficient probable cause, the search of [Gordon's] automobile was unreasonable in its scope and intensity and unconstitutionally permitted.

**{¶22}** The court concluded, and I agree, that there was insufficient probable cause to justify the search. While Bullins testified that he could see the backseat passenger moving around on the ground, the record fails to demonstrate any basis justifying the subsequent removal of M.H. from Gordon's car and the search of Gordon's car.

**{¶23}** Officer Bullins initiated the traffic stop at dusk in a suburban shopping center — not late at night in a "high-crime area." Bullins never testified that he had notice of shoplifting at Crocker Park that day, nor was there an alert that Gordon's vehicle fit the description of a car involved in a crime in the area. Moreover, Bullins did not recognize Gordon as someone who had been previously arrested for theft in the area. Furthermore, Bullins never testified that M.H.'s furtive movements made him fear for his safety or that he removed M.H., a juvenile, from Gordon's car for his safety. Bullins did not observe

evidence of a weapon or contraband in plain view.  When M.H. handed him the booster bag, it was empty.  Accordingly, the record does not demonstrate that Bullins had reasonable suspicion, based upon specific and articulable facts, that criminal activity was afoot.

{¶24} Therefore, I would find that the trial court properly granted Gordon's motion to suppress.