DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant Richard Rogers appeals from his conviction upon a no contest plea following the denial of his motion to suppress evidence. For the reasons that follow, the judgment of the trial court will be affirmed.
 {¶ 2} On the night of March 23, 2004, Trooper Kevin Velatean of the Ohio State Highway Patrol was stationed in his cruiser at the intersection of State Route 103 and Theo Moll Drive, on the outskirts of the city of Willard, in southern Huron County. He observed a car with its rear license plate light out as it was traveling past him on Theo Moll Drive, heading toward nearby Neal Zick Road, an area recognized by Velatean as being a high drug area. When Velatean pulled up behind the car, he saw the vehicle twice move left of center. He pulled the car over and, in order to maximize visibility, activated all of the white lights on his cruiser.
 {¶ 3} Inside the vehicle were four males, including appellant, who was riding in the back seat. Velatean exited his cruiser and made his way toward the driver's side of the pulled-over vehicle. As he approached, the driver of the car leaned his head out of the window and asked why he was being stopped. According to Velatean, the driver's movement of leaning out to talk betrayed a desire to keep Velatean away from the vehicle, and suggested that there was something to hide somewhere inside.
 {¶ 4} Velatean characterized the behavior of all of the car's occupants as unusually active.[1] To his mind, this was yet another indicator that there was something that the occupants wished to hide located somewhere inside the vehicle. In addition to the strange behaviors, Velatean also detected the odor of raw marijuana emanating from the car. Altogether, these circumstances were described by Velatean as being so atypical as to cause him to become fearful for his own safety.
 {¶ 5} In order to minimize any danger, Velatean escorted the driver from his car back to the police cruiser. In addition, he radioed for backup, indicating his suspicion that there could be drugs or a weapon located inside the vehicle.
 {¶ 6} The driver was noted to be intoxicated, failed sobriety tests, and was eventually arrested for OVI.
 {¶ 7} Trooper Monte Sexton of the Ohio State Highway Patrol and Sergeant Gregory Gadberry of the Huron County Sheriff's Department were among the officers who responded to Velatean's call for help. Sexton testified that, like Velatean, he could smell the odor of marijuana issuing from the car. He also testified that appellant was moving quite a bit and fidgeting to excess. According to Sexton, appellant seemed more nervous than anyone else he had ever detained — so nervous, in fact, that it was making Sexton, himself, feel nervous and uncomfortable.
 {¶ 8} Based on the smell of marijuana, the officers decided to search the vehicle. They removed the occupants one at a time, and, each time, Gadberry conducted what he characterized as a limited search for weapons in order to ensure the safety of the investigating officers.
 {¶ 9} The first person searched was the passenger who occupied the front seat. He had what was apparently a marijuana cigarette in his pocket.
 {¶ 10} Appellant was searched next. Leaning forward, he placed his hands on the car. Gadberry patted him down from the rear and felt along his waistband. Gadberry also checked his pants pockets, but found nothing.
 {¶ 11} After conducting the search from the rear, Gadberry turned appellant around and unzipped his large, bulky overcoat. At that point, Velatean, who was standing a short distance away, saw a handgun in a shoulder holster that appellant was wearing, and immediately shouted, "Gun, gun, gun."
 {¶ 12} Appellant was arrested for carrying a concealed weapon. Upon a subsequent, more thorough search of appellant's person, he was discovered to be in possession of 75 rocks of crack cocaine.
 {¶ 13} Appellant moved to suppress the evidence obtained by the officers, on the grounds that such evidence was obtained as a result of an unlawful search. On June 15-16, 2004, the trial court held a hearing to consider appellant's motion. After hearing testimony by Officers Velatean, Gadberry, and Sexton, and after viewing a videotape of the subject search and arrest, the trial court denied appellant's motion. In making its determination, the trial court specifically found the pat down search to have been lawful. The court explained:
 {¶ 14} "In order to search the vehicle, officers would need to lean into the vehicle with their backs to the Defendant and the others. They would be very vulnerable to sudden attack by either a lunge towards them or their weapons or use of the passengers [sic] own weapons.
 {¶ 15} "The Court finds the unzipping of the outer jacket is no more intrusive than the patting down. For some individuals, the physical touch is more intrusive.
 {¶ 16} "Sgt. Gadberry did not find the holster or gun from the rear pat down probably because these items swung away from the body of the Defendant.
 {¶ 17} "Based on the size and magnitude of the holster and weapon, it likely would have been found by a frontal pat down. However, the bulkiness of the coat could have hidden a small weapon or knife.
 {¶ 18} "Applying Terry to these facts, the isolated area and the number of men, the Court finds it reasonable under Terry of Ohio [sic] to unzip the jacket.
 {¶ 19} "The 77 [sic] rocks of cocaine was [sic] not found as a result of the Terry frisk but as the result of the lawful arrest for carrying a concealed weapon.
 {¶ 20} "The passenger could be ordered to exit from the car pursuant to Pennsylvania vs. Mimms, 434 US 106, 1977 and Maryland vs. Wilson,519 US 1977. State vs. Moore allows the search of the vehicle with a DUI plus the smell of Marijuana.[2]
 {¶ 21} "Terry v. Ohio allows the protective search in this high drug area with four large males, a DUI arrest, and extensive movements especially by the Defendant. Drugs and weapons are often found together. Nothing was found in the pockets and the unzipping is permitted here."
 {¶ 22} On June 17, 2004, appellant entered pleas of no contest to charges of cocaine trafficking, cocaine possession, carrying a concealed weapon, and having a weapon under disability, with a one-year firearm specification. On August 17, 2004, the trial court sentenced appellant to six year terms of imprisonment on each of the cocaine possession and trafficking charges, to a twelve month term of imprisonment for the concealed weapon charge and to a ten month term of imprisonment for the weapon under disability charge. All of the prison terms were ordered to run concurrently, with the exception of the one year term for the firearm specification. Appellant was thus sentenced to a total of seven years in prison.
 {¶ 23} Appellant timely appealed his conviction, raising the following as his sole assignment of error:
 {¶ 24} "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT WHEN IT OVERRULED HIS MOTION TO SUPPRESS EVIDENCE, WHERE SUCH EVIDENCE WAS OBTAINED THROUGH A WARRANTLESS, UNREASONABLE SEARCH OF HIS PERSON, IN VIOLATION OF HIS RIGHTS UNDER THE U.S. AND OHIO CONSITUTIONS."
Standard of review.
 {¶ 25} Appellate review of a ruling on a motion to suppress evidence involves a mixed question of law and fact. State v. Long (1998),127 Ohio App.3d 328, 332. Determinations of reasonable suspicion and probable cause are reviewed de novo. St. v. Bing (1999),134 Ohio App.3d 444, 448, citing Ornelas v. United States (1996),517 U.S. 690, 699. However, in hearing a motion to suppress evidence, it is the trial court which assumes the role of the trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. State v. Hopfer (1996), 112 Ohio App.3d 521, 548. Accordingly, "an appellate court must review the trial court's findings of historical fact only for clear error, giving due weight to inferences drawn from those facts by the trial court. The trial court's legal conclusions, however, are afforded no deference, but are reviewed de novo." State v. Russell (1998), 127 Ohio App.3d 414, 416, citingOrnelas, 517 U.S. at 699.
Analysis.
 {¶ 26} Appellant asserts three arguments in support of his claim that the evidence in this case was obtained in violation of his constitutional rights. First, he argues that the warrantless search of his person was unreasonable, because the officers did not have a valid reason to search him at all. Second, he argues that even if it was lawful to pat him down for weapons, the officers grossly exceeded the permissible scope of such a search. Finally, appellant argues that the trial court's "compartmentalized analysis," by which it upheld the one part of the search that led to the discovery of the evidence, was erroneous.
 {¶ 27} The Fourth Amendment to the United States Constitution safeguards individuals against unreasonable governmental searches and seizures. See, e.g., United States v. Arvizu (2002), 534 U.S. 266, 273. Section 14, Article I of the Ohio Constitution contains language that is nearly identical to that of the Fourth Amendment, and similarly prohibits unreasonable searches and seizures. See State v. Kinney (1998),83 Ohio St.3d 85, 87.
 {¶ 28} Searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under both the United States and Ohio Constitutions, subject only to a few specifically established and well-delineated exceptions. See Katz v. United States
(1967), 389 U.S. 347, 357. "Once the defendant demonstrates that he was subjected to a warrantless search or seizure, the burden shifts to the state to establish that the warrantless search or seizure was constitutionally permissible." State v. Hapney, 4th Dist. Nos. 01CA30, 01CA31, 2002-Ohio-3250, at 29.
 {¶ 29} Here, it is undisputed that appellant was detained and searched without a warrant. Accordingly, the burden is on the state to justify the conduct of the officers in this case.
 {¶ 30} Pursuant to Terry v. Ohio (1968), 392 U.S. 1, a law enforcement officer may stop an individual and conduct a limited search for weapons if the officer has a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has occurred or is imminent.Terry, 392 U.S. at 21; State v. Andrews (1991), 57 Ohio St.3d 86. In order to justify an investigative stop, the officer must be able to articulate specific facts which would warrant a person of reasonable caution in the belief that the person stopped has committed or is committing a crime. Whren v. United States (1996), 517 U.S. 806; Terry,
supra.
 {¶ 31} Here, there is no question but that the initial stop of the vehicle was proper. Velatean witnessed the car in which appellant was riding being driven with its rear license plate light out. In addition, he saw the car twice move left of center. He therefore had cause to believe that the driver of the vehicle committed a traffic violation. Because he had cause to believe that the driver of the vehicle committed a traffic violation, he was justified in making the stop.
 {¶ 32} We next consider whether the officers justifiably ordered appellant out of the vehicle. In Pennsylvania v. Mimms (1977), 434 U.S. 106, the United States Supreme Court held that where a vehicle has been properly stopped for a traffic violation, a police officer may order a driver out of the vehicle. In Maryland v. Wilson (1997), 519 U.S. 408, the Mimms rule was found to apply not just to drivers, but also to motor vehicle passengers. Accordingly, we find that the officers did not violate appellant's rights when they removed him from the vehicle.
 {¶ 33} The next issue for our consideration is whether Gadberry conducted a justifiable pat down search of appellant. To answer this question, we again look to Terry, which holds that a limited protective search of the detainee's person for concealed weapons is permitted if the officer reasonably suspects that the detainee is armed and presently dangerous to the officer or to others, regardless of whether he has probable cause to arrest the individual for a crime. Terry, supra, at 27. It is not enough to justify a Terry search that an officer has ordered an occupant out of his vehicle, however. State v. Evans (1993),67 Ohio St.3d 405, 409.
 {¶ 34} The instant case involves a vehicular stop, at night, in a high drug area, with an intoxicated male driver, the odor of marijuana emanating from the vehicle, and three other male occupants making extensive furtive movements. Based upon the totality of these circumstances, we conclude that the law enforcement officers had a reasonable, objective basis for conducting a Terry search of appellant.
 {¶ 35} We consider appellant's final two arguments together: (1) whether the officers exceeded the permissible scope of a Terry search; and (2) whether the trial court erred in upholding the part of the search that led to the discovery of the evidence.
 {¶ 36} In the instant case, appellant argues that Gadberry transgressed the limits of a permissible pat down search both when he put his hands inside appellant's pants pockets and when he unzipped appellant's coat.
 {¶ 37} In considering whether it was permissible for Gadberry to open appellant's coat, we are mindful that "[t]he very purpose of the warrantless search permitted by Terry is to allow a police officer to protect himself and to pursue his investigation without fear of violence."State v. Walker (Jan. 15, 1999), 2d Dist. No. 98 CA 57. To this end,Terry specifically authorizes an investigating officer "to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." Terry, supra, at 24.
 {¶ 38} The trial court specifically found in this case that "[b]ased on the size and magnitude of the holster and weapon, it likely would have been found by a frontal pat down. However, the bulkiness of the coat could have hidden a small weapon or knife."
 {¶ 39} Applying the above-stated legal principles to the facts of this case, where the evidence is uncontroverted that appellant was wearing a large, bulky coat, we find that Gadberry acted permissibly when he took the limited additional step of unzipping the coat in order to determine whether appellant carrying a weapon. As stated by the court in Walker,
supra, "[I]t would be anomalous to permit an officer to conduct a pat-down search for weapons in order to protect himself, but to preclude the officer from taking further limited steps to effectuate that purpose when the initial pat-down proves inconclusive." Id.
 {¶ 40} We next examine appellant's claim that Gadberry exceeded the scope of a permissible Terry search when he placed his hands inside appellant's pockets. Our review of the videotape leads us to conclude that, with respect to this aspect of the search, appellant is correct. When appellant was first removed from the car, the investigating officers were authorized to conduct only a limited search for weapons. In conducting the more extensive search of appellant's pockets, they clearly exceeded the scope of their authority under Terry.
 {¶ 41} According to appellant, the Terry violation invalidates the search entirely and, further, compels the conclusion that the evidence should have been suppressed. We disagree.
 {¶ 42} We initially note that the improper portion of the search yielded no weapon or contraband. The first incriminating item to be found during the search was the gun, which we have already determined was properly discovered upon the unzipping of appellant's jacket. The cocaine was not discovered until after appellant was arrested for unlawful possession of a weapon, and was properly discovered pursuant to the search incident to that arrest. Thus, it does not appear that any evidence was obtained by unlawful means.
 {¶ 43} Even assuming, arguendo, that the Terry violation tainted the entire search or, in the alternative, that the unzipping of appellant's jacket was improper, such would not conclude our analysis. Instead, we would have to consider whether the inevitable discovery exception applies to permit introduction of the evidence.
 {¶ 44} Under the inevitable discovery exception to the exclusionary rule, illegally obtained evidence is admissible at trial if the state demonstrates within a reasonable probability that law enforcement officers would inevitably have discovered the evidence during the course of a lawful investigation. State v. Perkins (1985), 18 Ohio St.3d 193, 196.
 {¶ 45} In the instant case, Gadberry testified that the reason he missed the gun when he patted appellant down from the rear was that the gun and the holster swung away from appellant's body when he leaned in toward the car. The trial court agreed with this explanation, and expressly found that the gun would likely have been found by a frontal pat down.
 {¶ 46} On the basis of the foregoing, we find that the prosecution adequately demonstrated that had the officers conducted a thorough pat down search of appellant's person — as we have already determined they were authorized to do under the circumstances — they likely would have discovered appellant's gun. Under such circumstances, the unlawful search of appellant's pockets does not provide grounds for suppressing the weapon. Cf. U.S. v. Robinson (C.A.6, 1998), 149 F.3d 1185 (finding, upon application of the inevitable discovery doctrine, that the possibly unlawful recovery of drugs from defendant's pocket did not provide a basis for suppressing the gun and ammunition that inevitably would have been discovered had the lawful pat down continued.)
 {¶ 47} For all of the foregoing reasons, appellant's assignment of error is found not well taken, and the judgment of the Huron County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Huron County.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Pietrykowski, J., Skow, J., concur.
[1] Although the extent of this reported unusual activity is not readily apparent on the videotape during the first few minutes after the stop, it does become increasingly clear as the tape progresses.
[2] The Court expressly found that Velatean had been trained and had extensive experience smelling raw marijuana, and that Sexton had had training on the detection by odor of burnt and raw marijuana and had smelled it on half a dozen arrests.