[Cite as *State v. Duran*, 2012-Ohio-2114.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellant

    v.

JOSE L. DURAN

    Appellee

C.A. No.     11CA009969

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.     09CR079222

DECISION AND JOURNAL ENTRY

Dated: May 14, 2012

BELFANCE, Presiding Judge.

{¶ 1} The State appeals from the trial court's granting of José Duran's motion to suppress. For the reasons set forth below, we reverse.

I.

{¶ 2} Ohio State Highway Patrolman Richard Menges clocked Mr. Duran traveling in excess of the speed limit. Patrolman Menges, a K-9 officer, initiated a traffic stop. He approached Mr. Duran's car and proceeded to engage him in conversation.

{¶ 3} As Patrolman Menges conducted a background check on Mr. Duran, a second Ohio State Highway Patrolman arrived at the scene and took over the duty of writing the warning or citation. Patrolman Menges got Johnny, his narcotics dog, from the back of his cruiser. He walked the dog up to the back of Mr. Duran's car and then along the passenger side. The dog alerted at the front passenger door. Patrolman Menges and the second officer searched the front

and back seating areas of the car but did not find anything. They then went to the back of the car and discovered a duffel bag containing 31 pounds of marijuana.

{¶ 4}  Mr. Duran moved to suppress the marijuana on the basis that Patrolman Menges had impermissibly prolonged the traffic stop. In his motion, he also argued that the patrolman's questions violated *Miranda*, although this was not pursued at the suppression hearing. The trial court rejected the argument that the duration of the stop was impermissibly extended. However, it asked the parties to brief whether Patrolman Menges could search the trunk of Mr. Duran's car on the basis of the dog's alert to the front passenger door under circumstances where the search of the passenger compartment did not reveal any contraband. After the parties submitted their briefs, the trial court, relying upon *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, determined that the dog's alert only gave Patrolman Menges probable cause to search the passenger compartment of Mr. Duran's car.

{¶ 5}  The State has appealed, raising two assignments of error for review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN GRANTING DURAN'S MOTION TO SUPPRESS BY APPLYING AN UNWARRANTED EXTENSION OF <u>STATE V. FARRIS</u>, 109 OHIO ST.[3D] 519, 2006[-]OHIO[-]3255.

{¶ 6}  The State argues that the trial court improperly applied *Farris* to a search based on an alert by a trained narcotics dog. According to the State, the dog's alert to the passenger compartment provided probable cause to search the trunk of Mr. Duran's car, notwithstanding the failure to find any contraband when searching the passenger compartment. Thus, the State argues, the marijuana was discovered during the course of a legal search.

**{¶ 7}** Generally, "review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003–Ohio–5372, ¶ 8. Thus, we defer to the trial court's findings of fact if they are supported by competent, credible evidence and review the trial court's application of the law to the facts de novo. *State v. Metcalf*, 9th Dist. No. 23600, 2007–Ohio–4001, ¶ 6.

**{¶ 8}** The trial court found that the dog alerted on the right front passenger door. This finding is supported by the dash-cam video of the stop, which shows the dog alerting solely to the front passenger portion of the vehicle. Relying on *Farris*, the court determined that the dog's alert did not give Patrolman Menges probable cause to search the back of Mr. Duran's car under circumstances where a search of the passenger compartment did not reveal any contraband.

**Probable Cause**

**{¶ 9}** The Fourth Amendment to the United States Constitution provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." "Section 14, Article I of the Ohio Constitution, nearly identical to its federal counterpart, likewise prohibits unreasonable searches." *State v. Moore*, 90 Ohio St.3d 47, 49 (2000). The Supreme Court of Ohio stated in *Moore*, that:

> [f]or a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant to a warrant. This requires a two-step analysis. First, there must be probable cause. If probable cause exists, then a search warrant must be obtained unless an exception to the warrant requirement applies. If the state fails to satisfy either step, the evidence seized in the unreasonable search must be suppressed.

(Internal citations omitted.) *Id.*

{¶ 10} Probable cause has been defined as "'a reasonable ground for belief of guilt.'" *Id*., quoting *Carroll v. United States*, 267 U.S. 132, 161 (1925). It means "more than bare suspicion: Probable cause exists where 'the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a [person] of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175-176 (1949), quoting *Carroll* at 162. It "must be based upon objective facts that would justify the issuance of a warrant by a magistrate." *Moore*, 90 Ohio St.3d at 49.

**Terry Stops**

{¶ 11} In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court of the United States created a narrow exception to the requirement of probable cause prior to effecting a search or seizure. In *Terry,* the Court determined that a police officer may momentarily stop and frisk a person where, based on specific facts, the officer concludes that the person has committed a crime or is about to commit a crime and may be armed and dangerous. *Id*. at 30. Since *Terry*, it is well settled that "[a]n investigative stop does not violate the Fourth Amendment to the United States Constitution if the police have reasonable suspicion that 'the person stopped is, or is about to be, engaged in criminal activity.'" *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, ¶ 35, quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981); *see also Terry* at 16-19.

{¶ 12} "The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case[,]" *Florida v. Royer*, 460 U.S. 491, 500 (1983), and any expansion of the scope must be based upon reasonable articulable suspicion. *See Terry* at 17-19. In addition, "an investigative detention must * * * last no longer than is necessary to effectuate the purpose of the stop." *Id.* Furthermore, "the investigative methods employed should be the

least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Id.*; *see also United States v. Brignoni-Ponce*, 422 U.S. 873, 881-882 (1975).

{¶ 13} A routine traffic stop is a relatively brief encounter that is analogous to a Terry Stop. *Berkemer v McCarty*, 468 U.S. 420, 439 (1984); *Knowles v Iowa*, 525 U.S. 113, 117 (1998). Thus, it is appropriate to apply *Terry* principles to the scope and duration of the traffic stop. As a result, where an officer stops a motorist initially based upon probable cause that he has violated speeding laws, the officer must limit both the scope and duration of the stop to the matter at hand, namely, writing the citation. Any expanded investigation unrelated to the traffic violation must be based upon reasonable articulable suspicion. *State v. Robinette*, 80 Ohio St.3d 234 (1997), paragraph one of the syllabus ("When a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when the continued detention is not based on any articulable facts giving rise to suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure."). For example, an officer could observe items in plain view, which could provide the basis upon which to expand the scope of the investigation and the duration of the seizure. Generally, as part of the scope of a traffic stop for speeding for which a citation will be given, diligent inquiry as to the validity of a driver's registration and license are viewed as within the scope of the citation process. *See, e.g., State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, paragraph one of the syllabus.

**Use of Narcotics-Detection Dog**

{¶ 14} In *Illinois v Caballes*, 543 U.S. 405 (2005), the United States Supreme Court considered the use of a narcotics-detection dog during a traffic stop. It held that a dog sniff,

conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess, does not violate the Fourth Amendment. *Id*. at 409. *Caballes* has been heavily criticized by Lafave. 4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, Section 9.3(b) (4th Ed.2011) ("[T]he *Caballes* decision seems to be grounded in nothing other than the bald assertion that only such conduct as itself constitutes a Fourth Amendment search can qualify as investigative activity amounting to a scope violation under the *Terry* line of cases * * * [but] the Supreme Court's relevant prior decisions consistently point in the other direction."); *see also* 4 LaFave at Section 9.3(f), citing *State v. Wiegand*, 645 N.W.2d 125, 136-137 (Minn.2002) (described by LaFave as correctly analyzing the scope and duration of a traffic stop in the context of a dog sniff).

{¶ 15} The Ohio Supreme Court has not analyzed *Caballes*, and thus it is unclear whether it would view its holding as consistent with the Ohio Constitution. *See, e.g., State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, ¶ 7 (finding Ohio Constitution, Article I, Section 14, provides greater protection than Fourth Amendment to United States Constitution against warrantless arrest for minor misdemeanors). In other words, even where the stop is of limited duration, it is unclear whether Ohio's Constitution would require an officer to possess reasonable articulable suspicion prior to expanding the scope of a traffic stop to the investigation of potential possession of drugs. Nevertheless, in this case, Mr. Duran at no point challenged the use of the narcotics dog.

**Probable Cause to Search Passenger Compartment and Trunk**

{¶ 16} In *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, the Supreme Court of Ohio considered the distinction between probable cause to search a passenger compartment of a vehicle and a trunk. In that case, an officer pulled the defendant over and, when he approached

the defendant's car, detected the light odor of burnt marijuana. *Id*. at ¶ 1. He asked the defendant to step out of the car, conducted a pat-down search of the defendant, took his car keys, and asked him to get into his police cruiser. *Id*. at ¶ 2. The officer then proceeded to ask questions about the smell of marijuana. *Id.* at ¶ 3. The defendant told the officer that his housemates had been smoking marijuana. *Id*. When the officer told the defendant that he was going to search the car and asked whether the defendant had any drugs or drug paraphernalia, the defendant told the officer that a drug device was in his trunk. *Id*. The officer searched the passenger compartment and did not find any contraband. *Id*. at ¶ 5. The officer then opened the trunk where he found a closed opaque container containing a glass pipe and cigarette papers. *Id*.

{¶ 17} The Ohio Supreme Court concluded that the defendant's statements should be suppressed as they were obtained in violation of his *Miranda* rights. *Id*. at ¶ 36. The Court then turned to whether the officer, without the defendant's statements, had probable cause to search the defendant's trunk. *Id.* at ¶ 50. The Court held that the officer did not have probable cause to search the trunk, noting that "[a] trunk and a passenger compartment of an automobile are subject to different standards of probable cause * * *." *Id*. at ¶ 51. The court concluded that "[t]he odor of burnt marijuana in the passenger compartment of a vehicle does not, standing alone, establish probable cause for a warrantless search of the trunk of the vehicle." *Id*. at ¶ 52.

**Search of Mr. Duran's Vehicle**

{¶ 18} In this case, the trial court relied upon *Farris* in concluding that the officer did not have probable cause to continue his search of the vehicle. The court's reliance upon *Farris* is understandable, in light of the *Farris* court's unqualified statement that a trunk and passenger compartment are subject to different standards of probable cause. However, the precise question of whether an officer has probable cause to search a trunk under circumstances where the search

in the passenger compartment where a dog alerted reveals no contraband is not before us. In this case, Mr. Duran's small vehicle did not have a "trunk." Rather, as revealed by the dash cam video, the vehicle he drove had a single, continual compartment where storage space abutted the rear passenger seat through which air could flow and into which a passenger could reach from the back seat. The marijuana was discovered in the small storage area behind the rear seat.

{¶ 19} As probable cause entails consideration of whether there is reasonably trustworthy information to warrant a person of reasonable caution in the belief that an offense has been or is being committed, *see Brinegar*, 338 U.S. at 175-176, the issue is whether the dog's alert provided reasonably trustworthy information such that a person of reasonable caution would believe that there was contraband present. In this case, the State provided evidence that Johnny was properly trained to detect narcotics and had passed the required training exams. The vehicle was compact, there was no real division between the rear cargo space and the rest of the passenger compartment, thus allowing air to flow throughout the vehicle, and there was no evidence suggesting that Johnny's sense of smell could not extend for the length of the vehicle. Thus, under the circumstances presented in this case, we conclude that the dog alert provided probable cause to search the interior compartment of the vehicle, including the space behind the rear passenger seats. Accordingly, the marijuana should not have been suppressed.

{¶ 20} In his responsive merit brief, Mr. Duran suggests that the trial court's judgment could be affirmed upon alternate grounds. However, this would require reversal of the trial court as to some its factual and legal determinations. As there is no cross-assignment of error, the alternative argument presented is not properly before us.

{¶ 21} The State's first assignment of error is sustained.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED IN GRANTING DURAN'S MOTION TO SUPPRESS BASED, IN PART ON AN ISSUE RAISED BY THE TRIAL COURT *SUA SPONTE.*

{¶ 22} In its second assignment of error, the State argues that the trial court improperly requested that the parties brief a new issue for its consideration regarding Mr. Duran's motion to suppress. However, given our resolution of the State's first assignment of error, this assignment of error is moot. *See* App.R. 12(A)(1)(c).

III.

{¶ 23} The State's first assignment of error is sustained, and its second assignment of error is moot. The judgment of the Lorain County Court of Common Pleas is reversed, and the matter is remanded for proceedings consistent with this decision.

Judgment reversed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
EVE V. BELFANCE
FOR THE COURT

WHITMORE, J.
CONCURS.

DICKINSON, J.
CONCURRING.

**{¶ 24}** I concur in the majority's judgment and all of its opinion except the refusal in paragraph 20 to reach Mr. Duran's alternative argument. The existence of Section 2505.22 of the Ohio Revised Code causes confusion regarding when an appellate court may consider alternative arguments for affirming a trial court's judgment. The Ohio Supreme Court, however, has written that "reviewing courts are not authorized to reverse a correct judgment on the basis that some or all of the lower court's reasons are erroneous." *State ex rel. Deiter v. McGuire*, 119 Ohio St. 3d 384, 2008-Ohio-4536, ¶ 21 (quoting *State ex rel. McGrath v. Ohio Adult Parole Auth.*, 100 Ohio St. 3d 72, 2003-Ohio-5062, ¶ 8). Accordingly, I would not require a cross-assignment of error before reaching an alternative argument for affirmance. In this case, the dash-cam video establishes that Patrolman Menges did not improperly extend the stop in order to conduct the dog sniff of Mr. Duran's car. Accordingly, I would reject Mr. Duran's argument that he did on its merits.

APPEARANCES:

DENNIS P. WILL, Prosecuting Attorney, and BILLIE JO BELCHER, Assistant Prosecuting Attorney, for Appellant.

PAUL GRIFFIN, Attorney at Law, for Appellee.

LAWRENCE JACKOWIAK, Attorney at Law, for Appellee.