[Cite as *State v. White*, 2014-Ohio-4202.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 100624

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## HARVEST L. WHITE

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-572783

**BEFORE:** McCormack, J., S. Gallagher, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** September 25, 2014

**ATTORNEYS FOR APPELLANT**

Ronald L. Frey
Eric C. Nemecek
Friedman & Frey, L.L.C.
1304 West 6th Street
Cleveland, OH 44113

Kristina W. Supler
McCarthy, Lebit, Crystal, Liffman Co.
101 Prospect Ave., W.
Suite 1800
Cleveland, OH 44115-1088


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:   Mary McGrath
Anthony Miranda
Assistant County Prosecutors
8th Floor, Justice Center
1200 Ontario Street
Cleveland, OH   44113

TIM McCORMACK, J.:

{¶1}   While on patrol with his K-9 in Cleveland's Fifth District on a March night, a K-9 officer pulled over defendant-appellant Harvest White's vehicle for lacking a license plate.   During the traffic stop, the K-9 scratched at the rear of the vehicle and, eventually, a bag of 43 grams of heroin was discovered in White's boot.   On appeal, White argues the trial court erred in denying his motion to suppress, claiming he was unlawfully detained and arrested.   Applying the Fourth Amendment case law to the sequence of events that unfolded on that night, we conclude the trial court properly denied the motion to suppress and affirm White's conviction of drug offenses.

## Evidence Presented at the Suppression Hearing

{¶2}   Trooper McGill of the State Highway Patrol had been a K-9 officer for seven months.    He testified at the suppression hearing.   The state also showed a video that captured the traffic stop.    Our review of the trooper's testimony and the video of the traffic stop revealed the following.

{¶3}   Trooper McGill and his dog, Edo, had been trained in a six-week program. They had spent over 200 hours training for both detection of narcotics and searching of buildings and areas.   The dog engaged in drug detection work at least five times each week.

{¶4}   On the night of March 22, 2013, McGill and his dog were working on a "shield detail" for the city of Cleveland in partnership with the Cleveland police

department, in the city's Fifth District. This is an area from St. Clair to Superior from East 55th to East 105th Street. At around 8:30 p.m., McGill made a traffic stop of a vehicle at Superior and East 72nd. The vehicle was missing a front license plate and its back license plate was not illuminated, both in violation of traffic law.

{¶5} Trooper McGill approached the vehicle and explained to the driver, Harvest White, that his vehicle was stopped because it did not have a front license plate and the back license was not illuminated. White stated he would fix the license plates. McGill asked White for his driver's license, the vehicle registration paper, and proof of insurance. White's hand was shaking "uncontrollably" when he handed McGill his license. He was also sweating profusely. White stated the vehicle was registered to him, yet the registration document showed the vehicle was registered to another individual. Because of the discrepancy, McGill advised White that he needed to run his license plate. He also told White he would issue only a warning, not a citation, for the traffic violation, because White had stated he would fix the license plates. McGill then asked White to exit the vehicle and come to the police vehicle while he ran the license plate.

{¶6} White exited the vehicle and walked toward the police vehicle. McGill asked White if he could pat him down for contraband. White consented. McGill did not find any contraband, but felt a bulge of cash in his pockets. He asked White how much money he had. White said about $4,500 dollars. The money was later determined to be $12,600. White explained the money was from a property investment

and he did not want to leave the money at the business. McGill asked White to sit in the back of the patrol vehicle while he ran the license number. McGill explained to White that safety forces were conducting a program in the area for illegal drugs and weapons. He asked White if he had any contraband with him. White answered no. McGill asked if he could have his K-9 sniff the exterior of White's vehicle. White consented. McGill then walked his dog around the vehicle. The K-9 search occurred within eight minutes of the traffic stop.

{¶7} The K-9 scratched the left rear passenger door, indicating it had detected the presence of narcotic odor. After the detection of the presence of narcotic odor, McGill then learned over his patrol radio that White had a positive criminal history for drug-related offenses.

{¶8} Because of the canine indication, coupled with White's criminal history, a large amount of currency on White's person, and his nervous behavior, McGill decided to search White's vehicle. By that time, another trooper, Trooper Shell, was also on the scene. They used a tool kit to search the interior of the vehicle. Trooper Shell discovered marijuana residue around the driver's seat. He also found in a digital scale with sticky white residue inside a gym bag in the rear seat of the vehicle. Based on his training and experience, Trooper McGill believed the white residue to be crack or crack cocaine. Also, in his experience, a digital scale inside a vehicle typically led to discovery of marijuana and other illegal drugs. Trooper McGill therefore decided to search White's person. He found a bag in White's right boot. Inside the bag was 43

grams of heroin. White was arrested and subsequently charged with drug trafficking, drug possession, and possessing criminal tools.

{¶9} The trial court denied White's motion to suppress evidence. White then entered a plea of no contest. At the sentencing hearing, the court recited White's long history of criminal convictions. It noted that White had a drug trafficking conviction in 2005 and had served a six-year prison term for his conviction. The instant incident occurred while he was on postrelease control within a year of his release from prison in May 2012.

{¶10} The court sentenced White to seven years for a merged count of drug trafficking and drug possession, and concurrent 11 months for possessing criminal tools. In addition, the court imposed a three- year term for his violation of the postrelease control, for a total of ten years.

{¶11} On appeal, White raises one assignment of error, claiming the trial court erred in denying his motion to suppress the evidence.

{¶12} An appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. We accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Preztak*, 181 Ohio App.3d 106, 2009-Ohio-621, 907 N.E.2d 1254, ¶ 22 (8th Dist.). Once we accept the factual findings as true, however, "'we must independently determine, as a matter of law and without deference to the trial court's

conclusion, whether the trial court met the applicable legal standard.'" *Id.*, quoting *State v. Lloyd*, 126 Ohio App.3d 95, 709 N.E.2d 913 (7th Dist.1998).

## The Legality of the Traffic Stop and Subsequent Detention

{¶13} We begin our analysis with the basic premise that the Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. In this case, a traffic stop over a missing license plate ended with a discovery of 43 grams of heroin in the driver's boot. In reviewing the police conduct in this case, we are mindful that, as this court observed, "most of the cases involving searches subsequent to traffic stops turn on minute differences in conduct often subject to varying interpretations that lead to either supporting or rejecting the police conduct." *Westlake v. Gordon*, 8th Dist. Cuyahoga No. 100295, 2014-Ohio-3031, ¶ 12.

{¶14} Here, while patrolling the area with his K-9, Trooper McGill stopped White's vehicle because it lacked a front license plate and had an unilluminated back license plate. Both were in violation of the traffic law. It is well settled that a traffic stop is lawful even if the traffic violations are minor, or "de minimis." *See*, *e.g.*, *Strongsville v. Spoonamore*, 8th Dist. Cuyahoga No. 86948, 2006-Ohio-4884; *State v. Parker*, 12th Dist. Warren No. CA2006-07-085, 2007-Ohio-3006 (a malfunctioning license plate light was a violation of the traffic law that warranted the traffic stop).

{¶15} Furthermore, "[w]here a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had

some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." *Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996), syllabus, citing *United States v. Ferguson,* 8 F.3d 385, 391 (6th Cir.1993).

{¶16} Indeed, White does not dispute the legitimacy of the initial stop of his vehicle. Rather, he claims Trooper McGill unlawfully detained him beyond the scope of the traffic violation.

{¶17} "When conducting the stop of a motor vehicle for a traffic violation, an officer may detain the vehicle for a time sufficient to investigate the reason for which the vehicle was initially stopped." *State v. Bennett*, 8th Dist. Cuyahoga No. 86962, 2006-Ohio-4274, ¶ 21, citing *State v. Bolden*, 12th Dist. Preble No. CA2003-03-007, 2004-Ohio-184. "Generally, the duration of the stop is limited to the time necessary to effectuate the purpose for which the stop was made." *Id*., citing *Bolden*. "This time period includes the time necessary to run a computer check on the driver's license, registration and vehicle plates." *Id*., citing *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). The Supreme Court of Ohio has also cautioned that where an officer stops a motorist initially based upon probable cause that he has violated traffic laws, the officer must limit both the scope and duration of the stop to the matter at hand, namely, writing the citation, and any expanded investigation unrelated to the traffic violation must be based upon reasonable articulable suspicion. *State v. Duran*, 9th Dist.

Lorain No. 11CA009969, 2012-Ohio-2114, ¶ 13, citing *State v. Robinette*, 80 Ohio St.3d 234, 685 N.E.2d 762 (1997).

{¶18} Here, Trooper McGill expanded the scope of the stop and asked White to exit his vehicle because of the discrepancy between White's assertion that he owned the vehicle and the ownership information contained in the registration paper. At the suppression hearing, McGill testified that he asked White to exit his vehicle for further investigation because at that point he did not know who the registered owner of the vehicle was. We note that as part of the scope of a traffic stop for a traffic violation, "diligent inquiry as to the validity of a driver's registration and license are viewed as within the scope of the citation process." *Duran* at ¶ 13, citing *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282.

{¶19} We also note that McGill's request for White to exit his vehicle while he ran a check on the vehicle's registration is permitted by a bright line rule given by the United States Supreme Court in *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). *Mimms* held that once a vehicle has been lawfully stopped for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's prohibition. *See also Gordon* at ¶ 14; *State v. Rogers*, 6th Dist. Huron Nos. H-04-030 and H-04-042, 2005-Ohio-5358, ¶ 32. The *Mimms* court explained that the additional intrusion of ordering a driver out of his car was "de minimis" because the driver was being asked to expose little more than what was

exposed during the original traffic stop. *Mimms* at 111; *State v. Elliott*, 8th Dist. Cuyahoga No. 92324, 2010-Ohio-241, ¶ 16.

{¶20} After White exited his vehicle, Trooper McGill patted down his outer garments, before asking him to sit at the back of police vehicle while he ran his license plate. We observe that a limited pat down of the exterior clothing is permitted to ensure officer safety. *See State v. Moore,* 8th Dist. Cuyahoga No. 100401, 2014-Ohio-2979, ¶ 13; *State v. Lawson*, 180 Ohio App.3d 516, 2009-Ohio-62, 906 N.E.2d 443, ¶ 21 (2d Dist.).

{¶21} While running the license plate, McGill asked White if he could have his K-9 sniff the exterior of his vehicle. The courts have noted that "[e]ven without a reasonable suspicion of drug-related activity, a lawfully detained vehicle may be subjected to a canine check of the vehicle's exterior." *State v. Jones*, 8th Dist. Cuyahoga No. 100300, 2014-Ohio-2763, ¶ 23; *State v. Rusnak*, 120 Ohio App.3d 24, 28, 696 N.E.2d 633 (6th Dist.1997). As the United States Supreme Court explained, the use of a well-trained narcotics-detection dog — one that does not expose noncontraband items that otherwise would remain hidden from public view — during a lawful traffic stop, generally does not implicate legitimate privacy interests. *Illinois v. Caballes*, 543 U.S. 405, 409, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). Thus, when a valid traffic stop has been initiated, an exterior dog sniff does not constitute a search within the meaning of the Fourth Amendment. *Id.*

{¶22} While a K-9 search was permitted after a traffic stop, we still must consider whether the officer's detention of White up to this moment is sufficiently limited in time. A detention justified by issuing a ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that process. "[A]n officer should, on average, have completed the necessary checks and be ready to issue a traffic citation in approximately 15 minutes." *State v. Brown*, 183 Ohio App.3d 337, 2009-Ohio-3804, 91 N.E.2d 1138, ¶ 23 (6th Dist.). Here, the record shows that the K-9 search, which detected the presence of narcotic odor inside the vehicle, occurred within eight minutes of the initial traffic stop. We cannot say the detention before the K-9 search was unreasonably or unlawfully prolonged.

{¶23} After the canine indicated the presence of narcotic odor, Trooper McGill gave White the *Miranda* warnings and then searched his vehicle. Under the "automobile exception," the police may search an automobile without a warrant, as long as the police have probable cause to believe the vehicle contains evidence of criminal activity. The courts, including this court, have held that once a trained drug dog alerts to the odor of drugs from a lawfully detained vehicle, as happened in the instant case, there is probable cause to justify a warrantless search of the vehicle for contraband. *State v. Davis*, 8th Dist. Cuyahoga No. 87964, 2007-Ohio-408, ¶ 40. *See also State v. Carlson*, 102 Ohio App.3d 598, 600, 657 N.E.2d 591 (9th Dist.1995) (once a trained drug dog alerts to the odor of drugs from a lawfully detained vehicle, an officer has probable cause to search the vehicle for contraband).

**{¶24}** Finally, in determining whether a law enforcement officer possessed probable cause to conduct a search of the defendant, we review the totality of the circumstances known to the officer at the time of the search. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Here, White's vehicle was initially stopped for a license plate violation. During the investigation of the traffic violation, the trooper uncovered a discrepancy in White's claim of ownership of the vehicle. A K-9 alerted to the presence of narcotics odor within minutes of the traffic stop. This led to a search of White's vehicle and discovery of a scale and drug residue inside the vehicle. The totality of the circumstances, which also included Trooper McGill's observation of White's unexplained nervousness and a large amount of cash in White's person, provided probable cause for a search of White's person for drugs.

## Reliability of Canine Indication

**{¶25}** On appeal, White also challenges the reliability of the trooper's K-9. He claims the K-9's reliability was not sufficiently established at the suppression hearing. In particular, he claims there was no detailed presentation of information regarding the accuracy of the dog's alerts, the mechanism of the dog's smell, or data regarding to the dog's number of false alerts. He argues that, in order to establish probable cause for a search of the vehicle, the state must produce the dog's training records.

**{¶26}** White does not cite to any case law authority for his claim. Rather, the case law indicates the testimony of a K-9's handler regarding the K-9's training and certification is sufficient to establish liability. "Proof of the fact that a drug dog is

properly trained and certified is the only evidence material to a determination that a particular dog is reliable." *State v. Nguyen*, 157 Ohio App.3d 482, 2004-Ohio-2879, 811 N.E.2d 1180, ¶ 55 (6th Dist.).   Furthermore, proof that a drug dog is properly trained and certified may be established by means of testimony or through documentary proof.   *Id.*

{¶27} In this case, Trooper McGill provided the requisite testimony at the suppression hearing regarding the training he and his dog completed and their certification for drug detection.   He was subject to extensive cross-examination on this issue.   For these reasons, we will not disturb the trial court's finding that the canine evidence in this case is reliable and credible.

{¶28} The assignment of error is without merit.   The trial court properly denied the motion to suppress.

{¶29} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.   The defendant's conviction having been affirmed, any bail pending appeal is terminated.   Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

TIM McCORMACK, JUDGE

SEAN C. GALLAGHER, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR