[Cite as *State v. Duran*, 2016-Ohio-5459.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| --- | --- | --- |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | | C.A. No.     15CA010820 |
| --- | --- | --- |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| JOSE DURAN | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | | CASE No.     09CR079222 |

DECISION AND JOURNAL ENTRY

Dated: August 22, 2016

HENSAL, Judge.

{¶1}    Jose Duran appeals the denial of his motion to suppress in the Lorain County Court of Common Pleas. For the following reasons, this Court affirms.

I.

{¶2}    The facts of this case are not in dispute and were discussed in our previous opinion in this case, *State v. Duran*, 9th Dist. Lorain No. 11CA009969, 2012-Ohio-2114. On the afternoon of September 28, 2009, State Trooper Richard Menges stopped Mr. Duran for speeding. While he conducted a background check on Mr. Duran, another trooper arrived, and Trooper Menges turned the duty of writing Mr. Duran a citation or warning over to the other trooper so that he could walk his narcotics dog, Johnny, around Mr. Duran's vehicle. When Johnny alerted on the front passenger door, the troopers searched the vehicle and found a duffel bag with marijuana in the back of the vehicle.

{¶3} After the Grand Jury indicted Mr. Duran for possession of drugs, he moved to suppress the evidence against him, arguing that Trooper Menges impermissibly prolonged the stop and asked him questions in violation of *Miranda*. The trial court granted the motion to suppress because it determined that Johnny's alert only allowed the troopers to search the passenger compartment of Mr. Duran's vehicle, not the trunk. On appeal, we reversed, explaining that, because there was "no real division" between the rear cargo area and the passenger compartment in Mr. Duran's particular vehicle, Johnny's alert "provided probable cause to search the interior compartment of the vehicle, including the space behind the rear passenger seats." *Id*. at ¶ 19. We remanded the case to the trial court "for proceedings consistent with this decision." *Id*. at ¶ 23.

{¶4} On remand, Mr. Duran supplemented his motion to suppress. In his supplement, Mr. Duran argued that dog sniffs themselves are searches that are prohibited unless a law enforcement officer has probable cause. He argued that the United States Supreme Court had decided that issue incorrectly in light of new studies about the reliability of dog sniffs. He also asked the trial court to find the practice unconstitutional under the Ohio Constitution. After the State responded, the trial court denied Mr. Duran's supplemental motion to suppress without holding another hearing. Mr. Duran subsequently changed his plea to no contest. The trial court found him guilty of the offense and sentenced him to two years of community control. Mr. Duran has appealed, assigning as error that the trial court incorrectly denied his motion to suppress without a hearing.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE WITHOUT A HEARING.

{¶5}   Mr. Duran argues that a dog sniff constitutes a search under Article I, Section 14 of the Ohio Constitution, which, he argues, provides more extensive privacy protections than the United States Constitution.  Article I, Section 14 provides:  "The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and things to be seized."

{¶6}   In *State v. Robinette*, 80 Ohio St.3d 234 (1997), the Ohio Supreme Court recognized that Article I, Section 14 of the Ohio Constitution is "virtually identical" to the Fourth Amendment of the United States Constitution.  *Id*. at 238.  It explained that the reach of Article I, Section 14 is "coextensive with that of the Fourth Amendment" and that their interpretation should be harmonized unless there are persuasive reasons to find otherwise.  *Id*. at 239, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87 (1991).

{¶7}   Mr. Duran notes that, since *Robinette*, the Ohio Supreme Court has twice held that Article I, Section 14 provides greater protections than the Fourth Amendment.  In *State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, the Court held that it "provides greater protection than the Fourth Amendment to the United States Constitution against warrantless arrests for minor misdemeanors."  *Id*. at syllabus.  In *State v. Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, it held that Article I, Section 14 "affords greater protection than the Fourth Amendment against searches and seizures conducted by members of law enforcement who lack authority to make an arrest."  *Id*. at ¶ 23.  Mr. Duran argues that this is another instance where courts should recognize greater protection under the Ohio Constitution.

{¶8} The Ohio Supreme Court has not identified any specific criteria that a court should consider when determining whether Article I, Section 14 of the Ohio Constitution provides greater protection than the Fourth Amendment. In *State v. Jones*, 88 Ohio St.3d 430 (2000), the Court examined whether arresting someone for committing a minor misdemeanor violated the Fourth Amendment. It explained that, in determining whether a governmental action violates the reasonableness requirement under the Fourth Amendment, a court "first examines whether the action was regarded as unlawful when the Amendment was enacted." *Id*. at 437, citing *Wyoming v. Houghton*, 526 U.S. 295, 299 (1999). If there was no clear practice at the time, "then its reasonableness is judged by weighing the competing interests involved. That is, the extent of the action's intrusion on the individual's liberty and privacy is weighed against the need for the intrusion to promote legitimate governmental interests ('balancing test')." *Id*. Regarding arresting someone for a minor misdemeanor, the Court was "unable to say that there was a clear practice forbidding such arrests[.]" *Id*. at 438. It, therefore, turned to the balancing test. Applying that test, it concluded that a full custodial arrest for a minor misdemeanor is an unreasonable seizure under the Fourth Amendment. *Id*. at 440.

{¶9} The United States Supreme Court subsequently held that the Fourth Amendment does not forbid a warrantless arrest for a minor criminal offense, undermining *Jones*. *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001). The issue re-emerged in the Ohio Supreme Court two years later. *Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931. Acknowledging *Atwater*, the Ohio Supreme Court considered in *Brown* whether the Ohio Constitution provides greater protection than the Fourth Amendment on that issue. Noting that the constitutions should be harmonized unless there are persuasive reasons to hold otherwise, the Court concluded that the balancing test it had applied in *Jones* provided "ample reason for holding that Section 14, Article I of the Ohio

Constitution provides greater protection than the Fourth Amendment to the United States Constitution against warrantless arrests for minor misdemeanors." *Id*. at ¶ 22, citing *Robinette*, 80 Ohio St.3d, at 239.

{¶10} In *State v. Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, the Ohio Supreme Court considered whether it was constitutional for a township patrol officer to stop someone on an interstate highway even though the officer did not have statutory authority to make the stop. The Court noted that, at common law, "police officers had no authority to make warrantless arrests outside the jurisdiction of the political entity that appointed them to office[.]" *Id*. at ¶ 12. It also construed the holding of its previous *Brown* decision broadly, writing that it had held that "an arrest made in violation of a statute limiting the police officer's authority to make the arrest infringes" on Article I, Section 14. *Id*. at ¶ 18. The Ohio Supreme Court's holding in the 2015 *Brown* case was even broader than its 2003 decision, with the Court concluding that Article I, Section 14 "affords greater protection than the Fourth Amendment against searches and seizures conducted by members of law enforcement who lack authority to make an arrest." *Id*. at ¶ 23.

{¶11} In this case, Trooper Menges had Johnny walk around Mr. Duran's car while another trooper completed a traffic stop. In *Illinois v. Caballes*, 543 U.S. 405 (2005), the United States Supreme Court held that any intrusion on a person's privacy expectation by a dog sniff that is performed on the exterior of a defendant's car while he was lawfully seized for a traffic violation did not "rise to the level of a constitutionally cognizable infringement." *Id*. at 409. It distinguished its holding from *Kyllo v. United States*, 533 U.S. 27 (2001), because it found that a dog sniff does not detect perfectly lawful activity, but only "the location of a substance that no individual has any right to possess[.]" *Id*. at 410.

{¶12} Mr. Duran argues that there are persuasive reasons for this Court to conclude that the Ohio Constitution prohibits a law enforcement officer from conducting a dog sniff of a lawfully stopped vehicle without having additional reasonable suspicion or probable cause. He asserts that he is in that class of individuals because there was nothing about his vehicle that would suggest he was engaged in some sort of criminal activity and his statements to Trooper Menges before the sniff were not odd or suspicious.

{¶13} According to Mr. Duran, the dog sniff was not a de minimis invasion of his privacy. He notes that Trooper Menges had him come and sit in his police cruiser next to Johnny while he asked him questions. This Court has explained, however, that "[s]imply requiring [someone] to sit in a police car for a short period of time to answer a few questions [does] not elevate the situation beyond the realm of the ordinary traffic stop * * *." *State v. Warrell*, 41 Ohio App.3d 286, 287 (9th Dist.1987). Mr. Duran also argues that Trooper Menges testified that he would routinely conduct dog sniffs of the vehicles he stopped. He has not established, however, why that has any bearing on whether a dog sniff itself constitutes an invasion of privacy.

{¶14} Mr. Duran also argues that the search was not done in furtherance of any governmental interest. He notes that in *Rodriguez v. United States*, __ U.S. __, 135 S.Ct. 1609 (2015), the United States Supreme Court noted that a dog sniff is not an ordinary incident of a traffic stop. *Id*. at 1615. It explained that a dog sniff does not assist a law enforcement officer in determining whether to issue a traffic ticket, but instead is a measure aimed at detecting ordinary criminal wrongdoing. *Id*. Even so, that does not establish that a dog sniff that is conducted during the duration of an otherwise lawful stop infringes on an individual's right to privacy.

{¶15} In his reply brief, Mr. Duran argues that there is a substantial difference between a random passerby approaching a vehicle when it is stopped on the street and a law enforcement officer conducting a dog sniff of that vehicle. Although he concedes that "no one has a privacy interest in the exterior of his car," he argues that a dog sniff is just the first step in an invasive search of the interior of the vehicle, which does implicate privacy interests. He also argues that new studies have shown that dog sniffs are unreliable and result in a number of false positives. Because Mr. Duran did not make these arguments in his initial brief, however, they are not properly before us. *State v. Newman*, 9th Dist. Summit No. 23038, 2006-Ohio-4082, ¶ 6 fn.1.

{¶16} Upon review of the record, Mr. Duran has failed to establish on appeal that there are "persuasive reasons" that Article I, Section 14 of the Ohio Constitution provides more protection against dog sniffs than the Fourth Amendment. We, therefore, conclude that the trial court correctly denied his supplemental motion to suppress. Mr. Duran's assignment of error is overruled.

### III.

{¶17} Mr. Duran's assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

WHITMORE, J.
CONCURS.

CARR, P. J.
CONCURRING IN JUDGMENT ONLY.

{¶18} I concur in judgment only as I would affirm on the basis that Duran's assigned error relates solely to a lack of a hearing. He has not demonstrated on appeal that a hearing was not held and/or why an additional hearing would be necessary on remand.

APPEARANCES:

RUSSELL S. BENSING, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and NATASHA RUIZ GUERRIERI, Assistant Prosecuting Attorney, for Appellee.